GALL *v.* DETROIT JOURNAL CO.

1. MASTER AND SERVANT—INDEPENDENT CONTRACTOR.

Where a person employed by a publishing company to deliver papers is not subject to control as to the method or means by which he produces the result contracted for, he is an independent contractor, and his negligence would not render the company liable, in an action on the same.

2. SAME—RIGHT TO TERMINATE CONTRACT.

Where the terms of the contract give the employer the right to terminate it at pleasure, he may, by assuming a control not warranted by the contract, make himself master and render him liable for the negligence of the employee.

3. SAME.

But the posting up of notices warning the employee not to exceed the automobile speed limit fixed by law was not such an exercise of control as to violate the terms of the contract.

Error to Wayne; Tucker, J., presiding. Submitted January 17, 1916. (Docket No. 25.) Decided June 1, 1916.

Case by Thomas Gall against the Detroit Journal Company for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed, and no new trial ordered.

*Geer, Williams, Martin & Butler,* for appellant.

*Lyle G. Younglove,* for appellee.

This action was brought against the Detroit Journal Company and one Albert Rebtoy to recover damages for a personal injury to the plaintiff. It was shown upon the trial that Rebtoy, while driving an automobile in the work of delivering newspapers for the company, ran against and upon plaintiff, injuring him severely. The negligence of Rebtoy is not denied, but upon the trial the action was discontinued as against him, and proceeded with against the company alone. It was plaintiff's theory that the company and Rebtoy bore to each other the relation of master and servant, and that the company, as the master, was responsible for Rebtoy's negligence. The company denied that Rebtoy was its servant, and insisted that, in delivering the papers, he was acting as an independent contractor. The relation of the parties was the real issue in the case. For the purpose of showing that Rebtoy was not its servant, and that in delivering the papers he was acting independently and upon his own responsibility, the company put in evidence the following contract:

"This agreement, made this 6th day of December, 1912, between the Detroit Journal Company, of Detroit, Mich., of the first part, and A. N. Rebtoy, of the same place, of the second part: Witnesseth: That for and in consideration of the mutual promises herein contained, the parties hereto agree as follows:

"1. The said second party agrees to deliver and distribute from the Detroit Journal Building, to such persons and at such places and along such route or routes

and on such regular schedule or schedules as may from time to time be designated and furnished to him by said first party, the time of and the routes and schedules for said delivery and distribution and the strict adherence thereto being the essence of this contract. In event contingencies render it apparently impossible for said second party to conform to said regular schedules or routes, he agrees to promptly notify first party by telephoning its mailing room, stating the facts and reasons therefor.

"2. The said first party agrees to pay the said second party therefor the sum of $38.00 per week, less following sums as stipulated damages for defaults and failures of second party; for each delay or lateness of from two to five minutes, 25c; and from six to ten minutes 75c; for each time first party for any reason hires or procures another vehicle to replace or relieve vehicle of second party, $1.00 up to $3.00, this being dependent upon the price the said Detroit Journal Co. has to pay a third party for the service.

"3. The said second party shall make such delivery and distribution according to his own means and methods of conveyance which shall belong to and be in the exclusive charge and control of said second party, and which shall not be subject to control or supervision by said first party excepting as to the results of said work; and it is hereby expressly understood that first party does not hereby hire or rent the use of the same or assume any liability for the use or method of use thereof.

"4. This agreement may be terminated by either party at any time without notice.

"5. The terms of this agreement shall not be changed, modified, altered or supplemented excepting in writing, signed by the parties hereto.

"In witness whereof, the said parties have hereunto set their hands the day and year first above mentioned.
"DETROIT JOURNAL.
"By (Signed)  GEORGE W. THOMAS.
"(Signed)  A. N. REBTOY."

As it further appeared upon the trial, Rebtoy was the owner of the automobile used by him, through purchase from the company in November, 1912, although

it was not fully paid for at the time of the accident. When he stopped delivering papers, he sold it to another party, who continued to use it in making deliveries for the company. The name "Detroit Journal" had been painted upon the car before Rebtoy bought it, and was yet on it at the time of the accident. Rebtoy kept the automobile at his home, took out the license in his own name, furnished his own gasoline, and made his own repairs. The newspapers, when received by Rebtoy, were wrapped in bundles, with labels thereon containing the names and addresses of the customers to whom they were to be delivered. After these were loaded into the automobile, Rebtoy proceeded to deliver them, driving upon any street he chose in doing so. The routes were changed from day to day, and stops added or taken off, as the company saw fit. The company never made any time schedule for Rebtoy's observance, but it did post up in its mailing room notices in the form of "advice" to him and other drivers of automobiles, warning them against violation of the speed limit fixed by law. It was conceded by the company that upon the failure of any driver to heed this "advice," advantage would probably be taken by the company of the clause permitting a termination of the contract. Rebtoy was not a drayman, had no drayman's license, and had no employment other than that for the Journal Company. The relation of the company and Rebtoy was submitted by the trial court as a question to be determined by the jury, and the jury, finding that they were master and servant, returned a verdict against the company in the sum of $500.

PERSON, J. (*after stating the facts*). The contract between the Detroit Journal Company and Rebtoy constituted a very plain and simple arrangement for an employment of an equally plain and simple character. Omitting the provisions relating to default or failure

in performance, it amounted to just this: Rebtoy was to deliver the papers to such persons, at such places, and on such time as the company should from day to day designate. Such delivery was the result to be obtained. And Rebtoy was to effect such delivery and obtain such result by any means and by any convey-veyance and in any way he saw fit. He could make the deliveries in person, or through others employed by him. It is shown by the evidence that those making deliveries for the company did occasionally employ others to do the work. He could use a horse, an automobile, or carry the papers on foot, provided he got them to the right persons, at the right places, and upon time. So far as the terms of the contract are concerned Rebtoy was certainly an independent contractor and not a servant. One whom the employer does not control, and has no right to control, as to the method, or means, by which he produces the result contracted for is an independent contractor. *De Forest* v. *Wright*, 2 Mich. 368; *Riedel* v. *Moran, Fitzsimons Co., Ltd.*, 103 Mich. 262 (61 N. W. 509); *Wright* v. *Manufacturing Co.*, 124 Mich. 91 (82 N. W. 829, 50 L. R. A. 495); *Lenderink* v. *Village of Rockford*, 135 Mich. 531 (98 N. W. 4); *Burns* v. *Paint Co.*, 152 Mich. 613 (116 N. W. 182, 16 L. R. A. [N. S.] 816); *Rogers* v. *Parker*, 159 Mich. 278 (123 N. W. 1109, 34 L. R. A. [N. S.] 955, 18 Am. & Eng. Ann. Cas. 753); *Larsen* v. *Telephone Co.*, 164 Mich. 295 (129 N. W. 894); *Inglis* v. *Driving Ass'n*, 169 Mich. 311 (136 N. W. 443, Am. & Eng. Ann. Cas. 1913D, 1174); *Ripley* v. *Priest*, 169 Mich. 383 (135 N. W. 258); *McBride* v. *Shingle Co.*, 173 Mich. 248 (138 N. W. 1077); *Bissell* v. *Ford*, 176 Mich. 64 (141 N. W. 860); *Bacon* v. *Candler*, 181 Mich. 372 (148 N. W. 194); and see copious note to *Richmond* v. *Sitterding*, 65 L. R. A. 445.

Rebtoy did have a contract for a specific piece of work; that is, for the delivery of the papers. And it

was none the less specific because the places to which the deliveries were to be made, and the persons to whom the papers were to be delivered, might change from day to day. The right, on the part of the company, to designate the persons and places was but a right to designate the result to be obtained, and did not give the company any control over the method for obtaining that result. Rebtoy was paid by the week, but so was the contractor in *Burns* v. *Paint Co.,* 152 Mich. 613 (116 N. W. 182, 16 L. R. A. [N. S.] 816). Rebtoy was not a licensed drayman, but that would not prevent his taking an independent contract, so far as the Journal Company was concerned. All of these things might be important in determining the relation of the employer and employed in a doubtful case, but they are not controlling in the face of a definite contract which clearly defines the relation. No reason is seen why a man may not agree, as an independent contractor, to deliver all, or part, of the papers printed by a publisher, of the groceries sold by a groceryman, or of the goods sold by a merchant, if the method and means for doing so are left entirely to him without any right of control by the employer. In the instant case either party had the right to terminate the contract at pleasure. That might be a very important circumstance in some cases, but under this contract any threat by the employer, express or implied, to use the right, for the purpose of controlling Rebtoy as to the method or means of making deliveries, would have been in violation of the terms of the contract. So long as the contract was adhered to, Rebtoy was independent in all of the methods of doing the work.

But a contract may be abandoned in whole or in part, or may be disregarded. And where the employer has the right to terminate the contract at his pleasure, he may use that power so as to exercise a control not

warranted by the contract. In all such cases the employer may assume the position of master, and make himself liable for the negligence of the employee. It is urged that the company in this case did in fact assume a control of Rebtoy as to his manner of delivering the papers by posting up notices in the mailing room for the control of the delivery men. But the only notice posted up, so far as we can gather from the record, was one requiring the delivery men not to exceed the speed limit fixed by law. This was really no exercise of control. It was, at the most, only a direction not to do a thing that the delivery men had no right to do. It did not assume to control any freedom of means and methods that the delivery men actually possessed.

As the evidence stood, we think the court should have directed a verdict for the defendant.

Judgment is reversed, and without a new trial, with costs to appellant.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.