## DAVIS v. GENERAL ACCIDENT FIRE & LIFE ASSUR. CORPORATION, Limited.

### No. 3398.

Court of Civil Appeals of Texas. Beaumont.
April 14, 1939.

Rehearing Denied April 26, 1939.

Howth, Adams & Hart and Mike Daughtry, all of Beaumont, for appellant.

Orgain, Carroll & Bell, of Beaumont, for appellee.

O'QUINN, Justice.

This case arose under the Workmen's Compensation Law. Vernon's Ann.Civ.St. art. 8306 et seq. The Enterprise Company, a corporation, was the employer, E. E. Davis the employee, and the General Accident Fire & Life Assurance Corporation, Ltd., the compensation insurance carrier. From an order of the Industrial Accident Board refusing appellant compensation he brought this suit to set aside the award and to recover compensation.

The case was tried to a jury, but the court instructed a verdict for appellee upon which judgment was rendered, and from which judgment appellant brings this appeal.

Appellant contends that the court erred in giving an instructed verdict for appellee because, under the undisputed evidence he was not an independent contractor, but was an employee of The Enterprise Company, covered by the compensation insurance car-

ried by appellee, and so entitled to recover.

The Enterprise Company is a corporation engaged in printing a daily paper, the Enterprise, and circulating it through a territory covering several counties in East Texas. In furtherance of this, on February 3, 1936, it entered into the following written contract with appellant, to-wit:

"Contract and Agreement.

"This contract and agreement made and entered into this the 3rd. day of February, 1936, by and between The Enterprise Company, a corporation, hereinafter styled First Party, and E. E. Davis hereinafter styled Second Party, witnesseth:

"In consideration of the work to be performed or caused to be performed by Second Party as set out herein, First Party agrees to pay to Second Party the sum of $30.00 per week.

"Second Party agrees to procure from First Party at a place or places and at times agreed upon by the parties hereto, newspapers published by First Party and deliver the same along a route or routes as follows:

"Papers for Beaumont to Lufkin and intermediate points; said papers to be picked up at Beaumont, and distributed to the distributor's places of business in the towns above mentioned, all of said papers to be conveyed by automobile, leaving Beaumont upon receipt of papers immediately after delivery to Second Party each day and carried to destinations immediately and at such rate of speed as to comply with the law.

"Second Party is to provide at his own expense such transportation and help as in his opinion he may need for deliveries of said papers and shall manage and conduct said route above designated in such manner as shall be for the best interest of First Party; Second Party to have full power to employ and discharge any or all assistants needed by him.

"Second Party agrees at all times to hold First Party harmless from any action, cause, causes of action, damages, costs, expenses, claims or demands whatsoever in law or in equity, which may arise from or grow out of or in any way be incident to the work or to be performed hereunder by Second Party, his employees or agents; it being expressly agreed that Second Party occupies at all times the position of an independent contractor and controlls all ways and means relating to the proper perform-

ance and completion of this contract; First Party looking to Second Party to obtain the desired results as herein set out.

"It is also agreed by the parties hereto that either party may terminate this contract by giving to the other party three days notice in writing of the desire of said party to so terminate the same.

"Witness the hands of the parties hereto, this the 3rd. day of February, 1936.

"The Enterprise Company
 "By L. E. Gillett First Party
"E. E. Davis · Second Party."

Under this contract, appellant secured a new Ford panel truck and began his services for The Enterprise Company. When he reported to L. E. Gillett, circulation manager for the Enterprise, he was advised as to the route he was to follow and what he was expected to do in discharge of his part of the contract. He was to report at the office of The Enterprise in the City of Beaumont daily at 11:45 P. M. to receive the papers he was to deliver. He then began his daily round delivering packages of papers at points between Beaumont and Keltys along what is known as the Beaumont-Lufkin highway. He had a schedule of time to go by, arriving at Keltys, the most northern point, at 5:30 A. M. He was required to make the intermediate points at schedule times. He was furnished printed slips called "drivers reports" upon which he was to note the exact time at which he passed each of the places where he was required to deliver papers to agents of The Enterprise Company, and if he was late at any of them he was required to state on the report slip the cause of being late. These report slips he was required to file at the Enterprise office each evening at 11:45 when he reported for another day's supply of papers to be delivered. The contract nor the oral instructions given him by Gillett in no way referred to his return trip from Keltys when he had concluded the day's delivery of papers at 5:30 A. M. He could make the return in his own way, only he was required to be at the office at 11:45 P. M. to file his report and receive papers for the next deliveries. He was allowed to solicit new subscribers for the paper along the route, but he received special compensation for this of 37⅛ cents for each such new subscriber per month he secured. He received $30 per week for transporting and delivering the papers to agents of the Enterprise on the route. If he, for any reason, was late in reporting to the office, he was called in for explanation, and was told that it was very important, if he kept the job, to be promptly on time and when he overslept and was late, there was deducted from his pay one dollar for each time he was late. The Enterprise collected from its agents at the various points of delivery for the papers furnished them, but occasionally when one of the agents was derelict in remitting for his papers, appellant was instructed to call the agent's attention and inform him that unless he remitted for the papers his papers would be discontinued. When appellant arranged with Gillett for the contract to carry the papers, he was told by Gillett that there was an arrangement between The Enterprise Company and the Texas Bread Company that the man who carried the papers on the route must carry the Texas Bread Company's bread and sell it along the route. For this the bread company was to pay the paper carrier a commission on the bread sales that would average around $30 per week. Appellant agreed to this and carried the bread and collected his pay. He was also informed that by arrangement between The Enterprise Company and Spears Dairy he was to carry Spears' milk and dispose of it along the route, for which it would pay $9 per week. He agreed to this and carried the milk and received the pay.

On September 4, 1936, while on his return trip after delivering all the papers he was required to deliver on that day's trip, appellant, when at or near Rosedale a few miles out from Beaumont, suffered severe injuries when his truck collided with a tree on the edge of the highway. This was about 1:30 to 2:30 in the afternoon. He testified that he must have gone to sleep as to the cause of the collision with the tree. He filed his claim for compensation with the Industrial Accident Board, which after full hearing was refused. In due time he filed this suit to set side this award and to recover compensation.

 Was, as contended by appellee, Davis an independent contractor, if so, then the judgment must be sustained. The employer, or master, is one who employs another to perform service in his affairs and who controls or has the right to control the physical acts of the other in the performance of the service. The servant, or employee, is a person employed by the

master or employer to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master. An independent contractor is one who contracts with another to perform some service for him, but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking.

The written contract above set out does not give the employer the control or the right to control with respect of Davis' physical conduct, or that of his employees, in the performance of the work provided for in the contract. In fact it provides that Davis shall employ his own help and shall control all ways and means relating to the proper performance and completion of the work provided for in the contract. Clearly under the express terms of the written contract, Davis was an independent contractor. Carter Publications v. Davis, Tex.Civ.App., 68 S.W.2d 640, and authorities cited at page 642, Writ denied. The cited case grew out of a contract to deliver papers on a prescribed route, identical in terms with the contract here involved and was very similar on the facts. Judgment for plaintiff there was reversed and rendered, and as shown, writ of error was refused. This case was cited by the Supreme Court with approval in Lehr v. Brown, 127 Tex. 236, 91 S.W.2d 693.

Appellant insists that there was evidence sufficient to show that The Enterprise Company did assume and exercise control over him with reference to performance of the contract, even though the written contract did not so provide, and hence he was an employee of The Enterprise Company. These incidents are urged to sustain this contention: appellant was required to appear at the Enterprise office at 11:45 P. M. to receive the papers to be delivered, his route of travel was designated, the schedule for deliveries at the several places to agents was given, he must sign and file a "drivers report", each day showing times of arrival at the different places, and if late was required to explain why late, was sent for and fined one dollar a week if he failed to promptly report at 11:45 at night for the papers, was admonished that if he desired to retain his contract he must be punctual, that on one occasion the highway that he travelled on the route was practically impassable at one point and they told him what detour he must take to reach Lufkin (on the route) on time which he did, that on one occasion his truck refused to operate which he reported to The Enterprise, and they told him to come on and they furnished him another truck to use, and for which he was not charged. We do not think these matters indicated exercise of such control by the employer as to create the relation of master and servant. They merely evidenced that the employer was exercising that nature of control to see that the work was being performed and desired results accomplished according to the terms of the contract. It is well settled law that an employer has the right to exercise such control over an independent contractor as is necessary to secure the performance of the contract according to its terms and to accomplish the results contemplated by the parties in making the contract without thereby creating the relation of master and servant. 23 Tex.Jur. 547, Secs. 6-7; 14 R.C.L. 68, Secs. 4-5; Carter Publications v. Davis, Tex.Civ.App., 68 S.W.2d 640; Lehr, Inc. v. Brown, 127 Tex. 236, 91 S.W.2d 693; Southern Surety Co. v. Scheel, 125 Tex. 1, 78 S.W.2d 173.; Smith Bros. v. O'Bryan, 127 Tex. 439, 94 S.W.2d 145; Security Union Ins. Co. v. McLeod, Tex.Com.App., 36 S.W. 2d 449; Traders & General Ins. Co. v. Jones, Tex.Civ.App., 95 S.W.2d 189.

But appellant says that as The Enterprise Company required him to carry and deliver bread for the Texas Bread Company, and milk for the Spears Dairy on his route, that this caused his status to be that of an employee of The Enterprise Company. We think the contention is without force. When appellant first learned of the opportunity to obtain the employment, he was in Arkansas. He communicated with L. E. Gillett, circulation manager for the Enterprise, and was informed that the opportunity for the contract was open and that it paid around $70 per week. He then came to Beaumont and met Gillett. Gillett told him that The Enterprise would pay $30 per week for delivering the papers, and that The Enterprise Company had an arrangement for the paper carrier to deliver bread for the Texas Bread Company, for which it would pay a commission averaging about $30 per week, and also had an arrangement with Spears Dairy to deliver its

milk on the route for which it would pay $9 per week. This was about $70 per week that the carrier would receive for his services. He agreed to this arrangement and entered upon the work. He delivered bread for the Texas Bread Company at the CCC camp at Woodville for the first month, and then the Fehr Baking Company underbid the Texas Bread Company and got the bread contract for the next month. He was not permitted to carry the bread for the Fehr Bread Company for the reason that The Enterprise had made an agreement with the Texas Bread Company that its carrier would not carry any other bread. He delivered the milk to the CCC camp also. In his deliveries of the bread and milk he testified that he was acting solely under the instructions and agreement with the bread company and the dairy company; that he considered that he was then their employee and not an employee of The Enterprise Company. It thus appears that appellant was performing under three contracts, each independent of the other. He further contends that the management of the Houston Chronicle, a daily paper published at Houston, Texas, sought to get him to carry its paper on his route and dispose of same and The Enterprise Company refused him permission to do so, and that this act constituted him an employee of The Enterprise Company. This contention is without force. The Enterprise Company was engaged in building up its own circulation and entered into the contract with appellant for that sole purpose. The Chronicle was an active competitor in the territory, and to have permitted its circulation by appellant would have greatly diminished and retarded the success of the undertaking contemplated when the contract with Davis was made. Furthermore, The Enterprise Company was engaged solely in the publishing and circulation of a newspaper, and not in manufacturing and selling bread, nor in producing and selling milk, and such was not in the course of its usual and customary business. In the performance of his duties to the bread company and the dairy company, he could not have been an employee of The Enterprise Company in contemplation of the Compensation law.

However, if it could be said that appellant was, under the facts, an employee of The Enterprise Company, then we think the judgment must be affirmed for the reason that, in our opinion, when appellant received his injuries he was not in the course of his employment in his master's business. In other words that the injuries sustained by appellant were not of such character as had to do with and originated in the employer's trade, business or profession, for in that appellant was not then engaged in the discharge of any duty he owed to The Enterprise Company. Appellant's whole duty to The Enterprise Company related to his delivery and distribution of its paper, the Enterprise, along and on the route extending from Beaumont to Keltys covering the highway from Beaumont to Lufkin. Keltys was just out of Lufkin on the north end of the route. Appellant was to and did reach Keltys at 5:30 A. M., where and when his duty ended for the day as to the distribution of the papers. He was not required to return to Beaumont at any hour prior to 11:45 P. M. when he reported his day's work and received the papers for the next day's delivery. His time was his own in so far as the paper work was concerned. But he then began the principal work to be performed by him for the bread company and the dairy company. He testified that he delivered the milk at the CCC camp at Woodville on his outbound trip in the early morning that the men might have it for the breakfast meal. He also delivered bread for that purpose. When he began his return trip he then actively sought to dispose of the bread given him for that purpose at the different places along the route, collected for the bread and made out a report of the bread sold, and when he reached Beaumont made his report to the bread company. On his return trip he took up empty milk bottles to return them to the Dairy and made his report to the Dairy together with receipts he was required to get for the milk delivered, and on reaching Beaumont reported to the Dairy, and received the milk supply for the next trip. He was on the return trip when he received his injuries, somewhere about 1:30 or 2:30 P. M., some 1½ or 2½ miles north of Beaumont, at Rosedale. He was not required to report at The Enterprise office until 11:45 that night when he reported his day's trip and received the papers for the next day's deliveries. Since leaving Keltys and Lufkin shortly after 5:30 A. M. he had not been doing and was not required to do any act in the furtherance of his contract

to deliver the papers, but his whole activities were in the discharge of his duties and undertaking for the Texas Bread Company and the Spears Dairy. At the time he was injured he had in his truck the bread boxes—containers—to be delivered to the bread company, and the empty bottles he was returning to Spears Dairy. He would obtain the bread and the milk for the next trip and then report at The Enterprise Company office at 11:45 P. M. It is clear, we think, that he had departed from his duties to The Enterprise Company and was engaged in matters foreign to any duty he owed it, and was engaged in matters solely for his own benefit at the time he received his injuries. He testified:

"Q. Now then, when you went to deliver your papers, Mr. Davis, the last delivery I believe you had was at Keltys, wasn't it? A. Yes, sir.

"Q. The requirement was you would deliver them all on the journey going up, rather than coming back, wasn't it? The Enterprise required you to do that? A. Yes, sir.

"Q. Then when you got to Keltys and put the papers out there, on your return trip you wouldn't—you would have completed all your deliveries, of course, on the papers themselves, wouldn't you? A. Yes, sir."

It is thus seen that appellant when he was injured was not in the course of his employment with The Enterprise Company, and that his injuries did not have to do with, nor did they originate in the employment of The Enterprise Company. While the rule is ordinarily to the effect that if an employee is sent on a mission by his master, that he is considered an employee while returning, if he does not step aside from his employment and engage in some enterprise for his personal profit or pleasure, and would be entitled to compensation if injured while on the return trip, but if the employee turns away from the course of his employment and engages in some act not in the usual course of his employment, and while in so doing he is injured, then he cannot recover. It is too clear for cavil that when appellant made his last delivery of papers at Keltys at 5:30 A. M. and began his return trip and while en route engaged in the sale of bread for the Texas Bread Company, and collecting empty milk bottles for return to the Spears Dairy, he was not then in the discharge of any duty he owed to The Enterprise Company, and was not performing any act in the usual course of his employment with said company, and so not entitled to recover. Southern Casualty Co. v. Ehlers, Tex.Civ.App., 14 S.W. 2d 111; Smith v. Texas Employers' Ins. Ass'n, 129 Tex. 573, 105 S.W.2d 192; Article 8309, Subd. 1.

What we have said disposes of the case, and it follows that the judgment should be affirmed, and it is so ordered. Affirmed.

In concurring in the affirmance of the judgment of the lower court, Judge Walker reserves his conclusion on the issue of "independent contractor".