## FEDERAL UNDERWRITERS EXCHANGE v. TURNER.

### No. 3702.

Court of Civil Appeals of Texas. Beaumont.
April 29, 1940.

Appellant's Rehearing Denied May 17, 1940.
Appellee's Rehearing Denied May 18, 1940.

Gordon, Sharfstein, Bell & Weinert, of Beaumont, for appellant.

Adams & Hillin, of Jasper, for appellee.

WALKER, Chief Justice.

This is a workmen's compensation case. Appellee, D. E. Turner, on his appeal from an adverse award of the Industrial Accident Board, alleged that he was injured on the 11th day of August, 1939, in the course of his employment with Peavy-Moore Lumber Company, and that appellant, Federal Underwriters Exchange, was the compensation insurance carrier. Appellant answered specially that at the time appellee was injured he was in the employment of an independent contractor, "W. R. Parker or some other person." The jury found in appellee's favor on all determinative issues on his claim of total, permanent disability, and that he "was not the employee of an independent contractor," and fixed his compensation at $8.65 per week. On the verdict of the jury, judgment was entered in appellee's favor against appellant for total, permanent incapacity for 401 weeks beginning the 11th day of August, 1939, at $8.65 per week, from which appellant has duly prosecuted its appeal to this court.

By its first three assignments of error, appellant complains (a) of the action of the court in overruling its motion for an instructed verdict, (b) that the evidence did not raise the issue that appellee was an employee of Peavy-Moore Lumber Company at the time he was injured, (c) that the finding of the jury that appellee "was not the employee of an independent contractor" was against the overwhelming weight and preponderance of the testimony. The evidence on the issue of "independent contractor" was as follows (Q. & A. reduced to narrative):

Appellee D. E. Turner testified: "I was hired in May, 1939, by W. P. Bond. Mr. Bond is known as putting out logs for Peavy-Moore; he lives down in there and has worked for them quite a while,

I suppose. Mr. Bond is employed by Peavy-Moore Lumber Company. He paid me for my work down there; he brought my payday to me in cash, which he went to the office at Deweyville and drawed. Mr. Bond requested me to go to work about the 15th or 20th of May, 1939. At that time my work was clearing the right-of-way in order for the trucks to get the logs out of the woods. The trucks hauling logs were not owned by Mr. Bond; they were independent trucks. They would pick up the logs and haul them out of the woods. To haul the logs the trucks had to have roads and that is where I came in. The log haulers were assigned strips of timber to haul, a certain definite area. I worked on the roads west of Gist on that six mile haul. I don't know what arrangement Mr. Bond had with Peavy-Moore Lumber Company about working there. I don't know anything about his contract with Peavy-Moore Lumber Company; Mr. Bond was the man who paid me, he brought my money and gave it to me in cash; he told me he would bring my money and he brought it. I went over to the office two or three times and got it. There must have been fifteen or twenty men working for Mr. Bond; I wouldn't know exactly; drivers, swampers and teamsters. I didn't do any truck driving. I did the swamp work on the road, clearing the roads of brush for the trucks. I have been pulled off one gang and put on another gang; Mr. Bond requested me to join the other gangs. I was swamping on the day I was injured; I don't know if I was swamping for Mr. Parker's trucks; I don't know who the trucks belonged to; it was in the same logging operation down there. At the time I was injured I was being paid two dollars and a half a day. I have not been paid any compensation by Federal Underwriters Exchange, or any other insurance company."

Tootsie Westbrook testified: "I worked with Mr. Turner in the woods. He swamped. Mr. Parker had four men on that job, Oscar Arden, Claude Youngblood, Mr. Turner and myself. When I speak of Mr. Turner, I mean the man sitting here at the end of the table. Mr. Turner swamped; cut brush. Mr. Parker instructed me what to do; no one else ever instructed me. Mr. Turner had not been working on this job very long, I don't know who sent him on the Parker job. Mr. Parker paid me for the work I did out there; no one else paid me. I would go to his house or to his office to get the pay; I got it in cash."

W. P. Bond testified—the W. P. Bond mentioned by appellee in his testimony: "I was logging during the months of July and August this year (1939) for Peavy-Moore Lumber Company, on a logging contract with them. The contract was not in writing, but the job was continuous during July and August but not at the same place through the whole month of August; we got cut off some time in August, along about the 11th or 12th, maybe the 10th, I wouldn't be too sure about that; they barred up the clearance and we had to lay off. Everybody was laid off, but up to that time it was a continuous job. Under my contract with Peavy-Moore Lumber Company I was to haul out the logs on the tract for so much a thousand. I didn't cut the logs, they were cut by the company. I had nothing to do with cutting the logs. No one designated the logs that were to be hauled except that if they cut a log that wasn't any account, one of their men would cull it, so I wouldn't haul it; every log that was cut I had to haul it. They marked the cull logs; I had nothing to do with marking the logs. Logs were scaled by Jack Scavenger, an employee of the company. I didn't do any of the scaling, I accepted Mr. Scavenger's scaling and was paid on the basis of his scale. We had certain strips, you know, and we had certain saws and wherever they sent them saws, we followed them. I was to take it to Gist, that big job, take it to Gist and put it on the Company track; they got a road that connects there. The logs were scaled after they were delivered. I used eight or ten men on that job; I hired them. Peavy-Moore did not hire any of the men that worked for me. The company did not know what men worked for me; they didn't keep any record of the men that worked for me; the company didn't at any time tell me what men to work; I fired the men that worked for me; the company didn't exercise any control whatever over the men that worked for me; they didn't have any right to determine the men who worked for me; I selected my own men.

"At one time I employed Mr. D. E. Turner. I employed him at different time; he worked for me several different times; the first time I remember right now of

him working for me was about two years ago; he cut logs for me; and then last year he worked on the road for me. That work was in Jasper county, lower end of Jasper county. He worked on the log roads. I believe that was in June, maybe July, I don't believe he worked for me in July; he worked in June; he must have worked two or three weeks—I am not certain about the length of time he worked for me; I got through with him and laid him off—I don't remember the date; it must have been about the first of July. After I laid him off he went to work for Mr. Parker, Mr. W. R. Parker; he was swamping for Mr. Parker. The work he did for Mr. Parker was a little different from the work he did for me. In his work for Mr. Parker he was with the team and mine was out on the main road. While Mr. Turner worked for me I paid him two dollars a day. I, myself determined his wage. Peavy-Moore made no requirement of me as to what I should pay my men. I don't know how long Mr. Turner worked for Mr. Parker. No, I really don't; I really don't; he worked for Mr. Parker from the time he went to work for him, which must have been about the first of July, until sometime in August, maybe the first of August; we all got laid off. When I got my contract with Peavy-Moore Lumber Company I had no equipment of my own to haul the logs; I went out and hired my equipment; I go out and contract for these hauling jobs. I work about eight men; I pay them whatever I please. I do not carry workmen's compensation. I know Mr. Walter Bean. He is woods foreman for Peavy-Moore Lumber Company. If Mr. Bean came out and told me to get on another tract I didn't have to do it; we contract certain places. I had a contract here to take this 100 yard strip. If Mr. Walter Bean had come out and said 'it is too wet, let's move over to the other side' I probably would have done it, but I don't think I had to. I might have done it if I wanted to. If I didn't want to, I wouldn't have had to give up my contract because I contracted to move logs off a specific tract."

Mr. W. R. Parker testified: "My services was with Peavy-Moore Lumber Company. As I understand, Kirby Lumber Company owned the timber before it was cut, and Peavy-Moore Lumber Company bought it. I was with Peavy-Moore. I worked four men, one of them was D. E. Turner. We were working on that dead timber job. My contract with Peavy-Moore was not in writing, only verbal. Under my contract I was to load and haul these logs to their track. The logs were scaled by Jack—about all I ever knew is Jack; he was employed by Peavy-Moore Lumber Company. I was paid according to his scale. I was not paid in accordance with the number of men I had, but on the basis of the number of logs I delivered at Gist. Peavy-Moore did not particularly designate the logs I hauled. Of course, we—in this rotten timber, you understand, there was some of it too bad to go, and occasionally one of their men would come along and cross out certain logs that they wouldn't take from Kirby Lumber Company; leave it right there and rot. I hauled the logs that were acceptable to Peavy-Moore; the logs that Jack marked. I was assigned territory along with Mr. Bond's crew. No, I wasn't working under Mr. Bond. I wouldn't think so; we were together, just merely together, you know, get up these patches of dead timber where they die, and on to another, just getting dead timber, not cutting the timber clean, but broken and dead stuff. Well, in fact, nobody designated the place where I would pick up the logs. Mr. Bond and I would verbally agree that I work on this side to keep from interfering with each other's various truck and teams; we would start operating properly by placing a line or something and I would stay on this side and work. Peavy-Moore Lumber Company designated the tracts I worked on, but Peavy-Moore didn't tell me; Mr. Bond—I was merely following his crew around. I was just following along with Mr. Bond's crew. I don't hardly know how to answer the question whether I was working with Mr. Bond or Peavy-Moore Lumber Company. My equipment was idle at the time and Mr. Bond told me I could get on the job if I wanted to put my stuff to work, so I went down and Peavy-Moore scaled the stuff and paid me for it. The four men that were working for me, I selected them myself. Peavy-Moore did not designate any of my men; they did not tell me to hire them; they did not make any requirement as to how many men I hire or who I hire; they did not make any requirement as to firing any of my men; they did not exercise any

jurisdiction over my men at all—none whatever. I was paid for my hauling by the thousand; $3.75 per thousand. I recall the wage I paid Mr. Turner; it was $2.50 per day. I knew what Mr. Bond had paid him; Mr. Bond and Mr. Turner told me; I raised Mr. Turner's wages. My men received their pay from the money paid me by Peavy-Moore Lumber Company. Mr. Turner was employed by me the last two weeks in July. The amount I paid my men was put out there by the name. When I paid them I would write this up before me to see what each one was supposed to draw; but the separate days was on this little time book that I lost track of, I couldn't find the little weekly time book; I just happened to have this. I paid Mr. Turner myself. I kept my payroll myself. Peavy-Moore didn't have any knowledge as to what my payroll showed as to the time of the men; they had no knowledge of my labor; they did not know what I paid my men. While I do not remember the dates, I would say that Mr. Turner was working for me the 11th day of August. As to my arrangements with Peavy-Moore, it was just a matter, it was all right for me to go and I did, on that particular job; it was all right for me to work and I didn't ask any questions. Our logs was designated by figures and where the number—number 16 was mine and all my logs had 16 marked on the end and the scaler counted them in that way and that was credited to Mr. W. R. Parker. The arrangement with Peavy-Moore and Kirby was if we hauled bad logs they would straighten that out among themselves; but the hauler got paid. I was paid $3.75 per thousand. I heard Mr. Bond testify that he was paid $5.00 per thousand. I can't account for the difference. That was none of my business; I didn't know what he got until I heard him testify; probably that was something to do with the main line road; probably the Company allowed him that; that would be my guess. We built our own roads in the woods, otherwise Mr. Bond built the roads, my trucks followed those roads because I was along with Mr. Bond's crew. My payroll was figured on the stumpage, or per thousand feet of logs I hauled. I paid my men about the 7th and 22nd of each month. Peavy-Moore held back as a reserve one week's hauling. Though there was a reserve held back on my work I didn't hold back on my men, I paid them up to date. I am acquainted with Mr. Walter Bean. He would come out on the job while I was working, but he never did direct me to do anything. Had he directed me, probably I would have obeyed him, if it wasn't damaging to me."

From the testimony we make the following fact conclusions. On the date of his injury, appellee was in the employment of W. R. Parker, who as an independent contractor was hauling logs for Peavy-Moore Lumber Company. Appellee was employed by Parker, who alone had authority to employ and discharge him; Peavy-Moore Lumber Company had no control whatever over appellee. Parker paid him his wages; at one time raising his wages, and the amount of his wages was beyond the control and without the knowledge of Peavy-Moore Lumber Company. Peavy-Moore Lumber Company had no information that appellee was employed by appellant, nor the amount of his wages, nor the nature of the work he was performing. The logs Parker hauled were all cut, culled and scaled by Peavy-Moore Lumber Company. Peavy-Moore Lumber Company assigned territory to Parker to be logged by him but the company had no authority over Parker except to designate the logs to be hauled and the place where they were to be delivered; Parker was paid on the basis of the logs delivered at the places designated by Peavy-Moore Lumber Company. Peavy-Moore Lumber Company had no control over Parker in any respect as to the details of his work. It had no control over him as to how he should perform his work, except to see that the hauling was carried out according to the terms of the contract and to accomplish the results contemplated by the parties in making the contract.

On our conclusion, Parker was an independent contractor under Peavy-Moore Lumber Company, and appellee was an employee of Parker and not of Peavy-Moore Lumber Company. In Davis. v. General Accident, Fire & Life Assurance Corpn., Tex.Civ.App., 127 S.W.2d 526, 529, this court said, Mr. Justice O'Quinn writing the opinion: "It is well settled law that an employer has the right to exercise such control over an independent contractor as is necessary to secure the performance of the contract according to its terms and to accomplish the:

results contemplated by the parties in making the contract without thereby creating the relation of master and servant."

The facts of Consolidated Underwriters v. Fitts, Tex.Civ.App., 106 S.W.2d 793, by this court, writ refused, sustain our conclusion, that on the facts of this case, Parker was an independent contractor. See, also, Southern Underwriters v. Freeman, Tex.Civ.App., 118 S.W.2d 367, writ refused; Jones-O'Shaughnessy Co. v. Bond, Tex.Civ.App., 79 S.W.2d 649; Manning v. Texas Employers' Ins. Ass'n, Tex.Civ. App., 67 S.W.2d 389; Southern Surety Co. of New York v. Scheel, 125 Tex. 1, 78 S.W.2d 173, adopted by Sup.Ct.; Smith Bros., Inc. v. O'Bryan, 127 Tex. 439, 94 S.W.2d 145.

Though on the facts as brought forward Parker was an independent contractor, yet it appears on the face of the record that, probably, the facts on this issue were not fully developed; there was no testimony from the officers of Peavy-Moore Lumber Company. For that reason judgment is not here rendered against appellee, but we simply sustain the assignment that the finding of the jury is without support in the evidence, and also against the overwhelming weight and preponderance of the evidence.

The judgment of the lower court is reversed and the cause remanded for a new trial.

Reversed and remanded.