**R. E. COX DRY GOODS CO. et al. v.
KELLOG et al.**

**No. 2251.**

Court of Civil Appeals of Texas. Waco.

Nov. 28, 1940.

676

Jos. W. Hale, Sleeper, Boynton & Kendall, and Naman, Howell & Boswell, all of Waco, for appellants.

Bryan & Maxwell and Orville Jobe, all of Waco, for appellees.

ALEXANDER, Justice.

This is an action for damages for personal injuries. There was evidence that W. H. Radebaugh, a traveling salesman, while in R. E. Cox Dry Goods Company store in Waco soliciting an order for products manufactured by Harriet Hubbard Ayer, Inc., set his sample cases in the aisle and that Mrs. Kellog stumbled over one of them and was severely injured. Mrs. Kellog sued Radebaugh and his alleged employer, Harriet Hubbard Ayer, Inc., hereinafter referred to as "Ayer," and R. E. Cox Dry Goods Company, hereinafter referred to as "Cox," for damages. Cox asked for judgment over and against Radebaugh and Ayer for any amount which it should be required to pay and Ayer likewise prayed for judgment over against Cox. Radebaugh filed a plea of privilege to be sued in Dallas county, the county of his residence. The plea of privilege was tried along with the main case and at the conclusion of the evidence, the plea was sustained and the suit as to Radebaugh was transferred to Dallas county. As to the other defendants, the case was submitted to the jury under special issues, and, in response thereto, the jury found, in substance, that one Joe Brown was an agent of Ayer for the sale of its products in Texas; that the nature of his agency was such as to make the employment of sub-agents necessary; that Radebaugh was Brown's sub-agent; and Ayer knew that he had been

so employed; that a contractual relation existed between Radebaugh and Ayer; that Radebaugh, acting in the course of his employment and as sub-agent for the sale of the goods of Ayer, negligently placed his sample cases in the aisle of Cox's store and thereby created an unsafe condition; that while Mrs. Kellog was using the aisle of the store as a customer, she struck her leg against one of said sample cases and was severely injured as a proximate result of such negligence; that Ayer, in the sale of its goods, negligently failed to warn salesmen engaged in the sale of its products against placing sample cases in the aisles of stores, which negligence proximately caused the injury complained of; that Cox designated the place where Radebaugh should exhibit his samples of goods; that the use of such place for such purpose was reasonably calculated to create a dangerous condition; that Cox was negligent in designating the place which it did so designate and such negligence was the proximate cause of plaintiff's injuries; that Cox negligently permitted Radebaugh to place his sample cases in the aisle; and such negligence was the proximate cause of the injury; that prior to the accident Cox did not have notice of the presence of said cases in the aisle; that Cox failed to exercise ordinary care to discover the cases in the aisle prior to the injury; that except for such failure said defendant would have discovered the cases in the aisle in time to have removed same prior to the accident; and that such failure was the proximate cause of Mrs. Kellog's injuries. The jury further found that the relation existing between Radebaugh and Ayer was not that of an independent contractor. The same finding was made as to the relation existing between Joe Brown and Ayer. The jury fixed the amount of plaintiff's damages at $9,800. Accordingly, a joint and several judgment was rendered in favor of Mrs. Kellog against Cox and Ayer, and a judgment was rendered in favor of Cox over against Ayer for a like amount. Both Cox and Ayer have appealed.

▮▮▮ Cox's first major contention is that the evidence was insufficient to show any negligence on its part, and, for that reason, the court should have instructed a verdict for it. It should be noted at the outset that Radebaugh was not an agent or employee of Cox and that if Cox is to be held liable at all, it is not because of Radebaugh's negligence in putting the cases in the aisle but because of Cox's failure to discover and remove them prior to the injury. The court submitted to the jury an issue as to whether, prior to the accident, Cox had notice of the cases in the aisle. The jury answered the issue in the negative. In connection with said issue, the court instructed the jury that by the term "notice" was meant "knowledge of such fact or facts as would put an ordinarily prudent person on inquiry, which inquiry, if followed with reasonable diligence, would lead to the discovery of the main fact, that is, the fact in question." We must presume therefore that Cox not only had no actual knowledge of the existence of the cases in the aisle but that said defendant did not have actual knowledge of any fact which would have put a reasonably prudent person on inquiry, but even though Cox had no such knowledge or notice, said defendant would be liable if the dangerous situation had existed long enough that a reasonably prudent person, in the exercise of ordinary care in looking after a store such as is here under consideration, would have discovered and removed the dangerous situation, for while a storekeeper is not an insurer of the safety of his customers while in his store, he is obligated to exercise ordinary care to keep the premises in a reasonably safe condition for their protection. 30 Tex. Jur. 871; 45 C.J. 837; Graham v. F. W. Woolworth Co., Tex.Civ.App., 277 S.W. 223; Texas-Louisiana Power Company v. Webster, 127 Tex. 126, 91 S.W.2d 302, 306; Bustillos v. Southwestern Portland Cement Company, Tex.Com.App., 211 S. W. 929. The mere finding that Cox had no knowledge of any fact which, if reasonably pursued, would have led to a discovery of the defective condition does not acquit said defendant of negligence in failing to exercise ordinary care to discover such facts. A storekeeper must exercise some care to see that his store is kept in a reasonably safe condition for his customers, even though he has no actual knowledge of any fact that would lead him to believe that a dangerous situation existed. Consequently, we must determine whether there was sufficient evidence to show that the sample cases had been in the aisle in such position as to create a dangerous situation long enough that, by the exercise of ordinary care, Cox should have discovered and removed same prior to the accident. The evidence shows that the aisle where the acci-

678

dent occurred was not a very wide one. Two people could walk down it abreast, but when someone was standing in the aisle, other customers had to pass down the aisle single file. In fact, Radebaugh testified that when he was standing in the aisle, stooping over the counter writing out his order, no one could get through the aisle unless he straightened up. There was a show case on the east side of the aisle and a table on the west side. Radebaugh went to the show case to exhibit his samples and secure an order for his goods. He was in the store somewhere between forty minutes and an hour. There is a dispute as to whether he had four or five sample cases. The witnesses described the cases as being from 7 to 10 inches wide. They were from 12 to 14 inches high. Radebaugh testified that he set some of the cases in the aisle, end to end, flat up against the panel of the table on the west side of the aisle and put the others on the show case and removed his samples therefrom. From time to time, after he finished with one case, he would replace the samples in it and place it in the aisle, flat against the table, and take up another one for the display of his samples. The sides of the table appear to have been boxed up approximately flush with the outside edge of the top of the table so that the cases could not be pushed back under the table. From this it appears that during the whole of the one hour period that Radebaugh was engaged in exhibiting his samples, some of the cases were in the aisle commonly used by the customers of the store. According to the testimony of Radebaugh, he had finished his work prior to the accident, and all of his cases were in the aisle. Mrs. Kellog and her sister, who was with her at the time of the accident, testified that immediately after the accident they looked back to see what had caused Mrs. Kellog to fall and that they saw two of the sample cases sitting in the aisle; that they were then turned out in the aisle at an angle; and that the one which Mrs. Kellog struck with her leg was about 14 inches high, 8 or 10 inches wide and 30 inches long. In view of the narrowness of the aisle and the width of the sample cases, we think the evidence was sufficient to justify the conclusion that the presence of the sample cases in the aisle created a dangerous situation and that such condition existed for the whole of the hour prior to the accident.

It is true that the sample cases were being moved and replaced from time to time and that there was no evidence as to how long the particular sample case which Mrs. Kellog struck had been in the aisle, nor how long it had been sitting at an angle across the aisle, but we do not think this alters the case. Radebaugh had used the aisle continuously for an hour. There were at least two of the cases in the aisle at all times. The presence of any one of them created a dangerous situation. Consequently, if a representative of Cox had passed down the aisle at any time during the period in question, he would have discovered a dangerous situation. While the matter is not free from doubt, we have reached the conclusion that the jury was justified in concluding as it did that in view of the size of the store, the amount of trade carried on therein, and the frequency with which the aisle was used, together with all of the other circumstances in evidence, Cox did not exercise ordinary care to discover and remove the dangerous situation prior to Mrs. Kellog's injury. This assignment is overruled.

Ayer contends that there was no such contractual relation existing between it and Radebaugh as to make it responsible for his negligence. The evidence shows, without dispute, that Radebaugh was working as an agent of one Joe Brown at the time of the accident in question. Brown testified that for many years prior to 1934, he was engaged in selling Ayer products on a commission basis; that he had the exclusive agency in Texas and several other southern states; that he sold the goods exclusively on a commission basis; that he was in nowise under the control or direction of Ayer as to how he carried on the business, except as to the terms of sale and prices to be received for the goods; and that otherwise it was left entirely to his discretion as to how he would carry on the business. In 1934, Brown became the vice-president and general sales manager of Ayer, but at that time, as an inducement to him to accept the management of the company, it was specifically agreed that he would be allowed to retain his southern territory, including the state of Texas, with the right to the exclusive agency for the sale of such products on a commission basis in said territory on the same terms and conditions as had previously existed; that said contractual relation continued up to and including the month of October, 1936, when

the accident in question occurred. He further testified that he owned no stock in the Ayer Company. Brown was corroborated in his testimony by Mrs. Lillian S. Dodge, president of Harriet Hubbard Ayer, Inc. Both Mrs. Dodge and Brown testified that the company furnished samples of goods to be used in making sales, supplied the blanks on which the orders were to be taken, and fixed the prices and terms at which the products were to be sold, but that otherwise the company exercised no control whatever over Brown and his employees in the carrying out of the contract in the territory allotted to Brown. Mrs. Dodge also testified that the contract was terminable at will and that the company would have discharged Brown if he had not produced a satisfactory business, but that the company did not undertake to exercise any control whatever over him and his employees as to how the contract should be carried out, except as above indicated. The above testimony was not materially contradicted in any respect. Both Brown and Radebaugh testified that Radebaugh was first employed by Brown in 1932 to sell Ayer products for Brown on a salary basis in the state of Texas; that said relation continued up to the time of the accident; that the company never paid Radebaugh any salary or commission; but his salary was paid exclusively by Brown as an individual, and that all orders taken by Radebaugh were first sent to Brown, and, after being checked by him, were sent to the company to be filled; that Ayer did not employ Radebaugh and did not undertake to exercise any control whatever over him in the carrying out of his contract with Brown.

We think this evidence was wholly insufficient to show such contractual relation between Radebaugh and Ayer as to make Ayer liable for his negligence. If Ayer is liable at all, it must be because of the doctrine of respondeat superior, growing out of the relation of master and servant. It appears without dispute that Radebaugh was not employed by Ayer but by Brown. We must therefore ascertain whether Brown was a servant of Ayer or an independent contractor. Restatement of the Law of Agency, ch. 1, par. 2, thus defines "master," "servant," and "independent contractor": "(1) A master is a principal who employs another to perform service in his affairs and who controls or has the right to control the physical conduct of the other in the performance of the service. (2) A servant is a person employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master. (3) An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking." The above definitions are substantially in accord with those adopted and applied by the courts of this state. See Carter Publications v. Davis, Tex.Civ.App., 68 S.W.2d 640, 642, and authorities therein cited.

Under the rules above announced and the facts shown by this record, Brown was clearly an independent contractor and not a servant within the meaning of the law that makes the master liable for the negligence of the servant. Ayer did not exercise any control over the physical conduct of Brown or his employees in performance of the contract. The fact that Ayer's contract with Brown was terminable at will and that Ayer would have terminated it if Brown had not produced satisfactory results, and the further fact that Ayer fixed the prices and terms upon which the goods were to be sold, does not evidence such control over Brown as to render him a servant of Ayer. Such evidence merely shows that the employer was exercising control to see that the work was being performed and results accomplished according to the terms of the contract. As we understand, an employer has a right to exercise such control over an independent contractor as is necessary to secure performance of the contract according to its terms and to accomplish the results contemplated thereby without thereby creating the relationship of master and servant, so long as the employer does not destroy the employee's power of initiation nor undertake to control the employee in the means and manner of the performance of the work. See Carter Publications v. Davis, Tex.Civ. App., 68 S.W.2d 640, pars. 2, 3; 14 R.C.L. 68; 23 Tex.Jur. 547; Lone Star Gas Co. v. Kelly, Tex.Com.App., 46 S.W.2d 656; Davis v. General Acc. Fire & Life Assur. Corp., Tex.Civ.App., 127 S.W.2d 526, par. 6; Lehr, Inc., v. Brown, 127 Tex. 236, 91 S.W.2d 693, par. 1.

It is true that at the time of the accident, Brown was the vice-president and sales manager of Ayer and that Radebaugh was employed by Brown and was under his

control; but he was the employee and under the control of Brown as an individual and not as vice-president and sales manager of Ayer. It was undisputed that before Brown became vice-president of Ayer, he was engaged as an independent contractor in the sale of Ayer's products in the state of Texas on a commission basis. At the time he became vice-president of the company, as an inducement to him to accept the position, it was agreed by all parties that he could continue to operate such commission business as his individual project, separate and apart from the company's business. We see no reason why such a contract should not be observed by the courts, where it is fairly entered into by all parties. Zorn v. Brooks, 125 Tex. 614, 83 S.W.2d 949. If Brown continued to operate the commission business as his own separate project, as he had a contractual right to do and as all the evidence shows that he did, then his employees in such commission business were not the servants of Ayer.

Cox's contention that Ayer, by its course of dealings, is estopped to deny that Radebaugh was its agent and representative cannot be sustained, because a person seeking to avail himself of the benefit of the doctrine of agency by estoppel must show that he has been induced to act to his prejudice on the implied representations of agency. 2 Tex.Jur. 424. No such showing was made in this case. We sustain the appellant Ayer's contention that the evidence is insufficient to show liability on its part.

Mrs. Kellog makes no complaint of the ruling of the court in sustaining the defendant Radebaugh's plea of privilege as to her suit, but Cox does complain of the sustaining of such plea as to the defendant Cox's cross-action. Cox sought judgment over against both Radebaugh and Ayer. The venue of such cross-action cannot be maintained in McLennan county under section 4 of Revised Statutes, art. 1995, Vernon's Ann.Civ.St. art. 1995, because neither of the defendants as to such cross-action resides in McLennan county. Cox asserts, however, that since it had the right to main-

tain its suit against Ayer, a foreign corporation, in McLennan county, it had a right to hold Radebaugh in the same suit as a necessary party defendant under section 29a of the same article. It has been held that when it is sought to maintain a suit against two or more defendants in the county of the residence of one of them under section 4, the plaintiff must prove a valid cause of action against the resident defendant. Stockyards National Bank v. Maples, 127 Tex. 633, 95 S.W.2d 1300; Caprito v. Weaver, Tex.Civ.App., 77 S.W.2d 595; Lipscomb v. Rankin, Tex.Civ.App., 139 S.W.2d 367. It would seem that the same rule should prevail in suits brought under section 29a—that is, that plaintiff should be required to prove a valid cause of action against the other defendant rightfully sued in the county where the suit was filed. As hereinbefore held, plaintiff failed to establish a valid case against Ayer and hence did not have the right to hold Radebaugh in the same suit on the ground that he was a necessary party. Radebaugh did not commit a trespass in McLennan county within the meaning of section 9 of Article 1995, and hence the venue could not be maintained in said county under said section. No reversible error is presented because of the sustaining of the plea of privilege.

It appears that the suits of the plaintiff against Harriet Hubbard Ayer, Inc., and the cross-action of R. E. Cox Dry Goods Company against the same defendant have been fully developed and that the evidence is insufficient to show any liability on the part of Harriet Hubbard Ayer, Inc. Consequently, the judgment in favor of the plaintiff against Harriet Hubbard Ayer, Inc., is set aside and judgment is here rendered that plaintiff take nothing against said defendant. Likewise, the judgment of R. E. Cox Dry Goods Company against the same defendant is reversed and judgment here rendered that said R. E. Cox Dry Goods Company take nothing as against said defendant on its cross-action. The judgment of the trial court is in all other respects affirmed.