**MID-CONTINENT FREIGHT LINES, Inc.,** Appellant,

v.

**CARTER PUBLICATIONS, INC., Appellee.**

No. 16108.

Court of Civil Appeals of Texas.

Fort Worth.

May 27, 1960.

Rehearing Denied June 24, 1960.

886

Akin & Vial, and Henry D. Akin, Jr.,. Dallas, for appellant.

Collins & Green, and Robert Green, Fort. Worth, for appellee.

RENFRO, Justice.

Suit was filed by Mid-Continent Freight Lines, Inc., against Carter Publications, Inc., for damages to plaintiff's tractor, trailer, and cargo, and for loss of use of such tractor and trailer when it was struck:

by an automobile being driven by Ray Nichols Cherry. Plaintiff alleged that at the time and on the occasion in question Ray Nichols Cherry was an agent, servant, and employee of Carter Publications, Inc., and was acting in the course and scope of his employment as such.

Defendant filed motion for summary judgment on the basis Ray Nichols Cherry was not, on the occasion in question, the agent, servant and employee of defendant.

After hearing the motion, the trial court entered its order sustaining the motion for summary judgment.

Plaintiff contends that a fact question was presented as to whether Cherry was an agent, servant and employee of defendant.

The defendant, Carter Publications, Inc., publishes the Fort Worth Star Telegram, a daily newspaper. For the purpose of providing for the delivery of its newspapers in certain areas north of Fort Worth, it entered into the following written contract with R. N. Cherry:

"Agreement

"This Agreement made and entered into this the 1st day of May 1958, by and between Carter Publications, Inc., a corporation, hereinafter styled First Party, and R. N. Cherry, Box 148 Sanger, Texas Tel. 27, hereinafter styled Second Party: Witnesseth:

"In consideration of the work to be performed or caused to be performed by Second Party as set out herein, First Party agrees to pay to Second Party the sum of $275.00 per Month.

"Second Party agrees to procure from First Party at a place or places and at the times agreed upon by the parties hereto, papers published by First Party and deliver the same along a route or routes as follows: From Denton to Pilot Point, Collinsville, Whitesboro, Gordonville, Tioga, Callisburg, Gainesville, Lindsay, Myra, Muenster, Era, Valley View, Sanger and Intermediate points and surrounding roads. All papers, mail sacks and agents bundles. Seven days per week. Morning and Sundays.

"Within said route, Party of Second Part chooses his own hours of work, his own way of travel, his own kind and method of transportation, chooses, pays and discharges his own assistants, and assumes and pays all and every expense whatsoever connected with the foregoing matters, with no reimbursement whatsoever therefor from First Party.

"It is further agreed that Second Party shall manage and conduct the route above-described in such manner as shall subserve the best interests of First Party, and failing to do this, First Party shall have the right (of which it shall be the exclusive judge) to terminate the services of Second Party. In addition, either party may terminate this contract by giving to the other party 30 days notice in writing so to terminate this agreement.

"It is further stipulated that Second Party occupies at all times in the performance of his tasks, the position of an independent contractor, and exercises all ways and means relating to the performance of this contract.

"Witness the hands of the parties hereto on this 29th day of April 1958.
                    "Carter Publications, Inc.
                        "By James M. Grace
                                    First Party
                    "R. N. Cherry
                                    Second Party.
"Witnesses:
"James R. N. Davis"

In Carter Publications v. Davis, 68 S.W. 2d 640, 642, error refused, a contract between the same defendant and one Dickinson, with almost identical provisions as the instant contract, was before the Waco Court of Civil Appeals. There Justice Alexander speaking for the Court held: "The written contract above set out does

not give the employer the control or the right to control with respect to Dickinson's physical conduct, or that of his employees, in the performance of the work provided for in the contract. In fact, it provides that Dickinson shall employ his own help and shall control all ways and means relating to the proper performance and completion of the work provided for in the contract. Clearly, under the terms of the written contract, Dickinson was an independent contractor. Thomas Gall v. Detroit Journal Co., 191 Mich. 405, 158 N. W. 36, 19 A.L.R. 1164; McKinney v. Sherwin-Williams Co. of Texas (Tex.Civ.App.) 271 S.W. 133; Harvey v. Meadowlake Milk Products Co. (Tex.Civ.App.) 27 S. W. (2d) 299; Shannon v. Western Indemnity Co., supra; National Cash Register Co. v. Rider, supra; New York Indemnity Co. v. Industrial Accident Commission (Cal.App.) 287 P. 368; Texas Electric Service Co. v. Kinkead, supra; Southern Surety Co. v. Shoemake (Tex.Com. App.) 24 S.W. (2d) 7; Lone Star Gas Co. v. Kelly (Tex.Com.App.) 46 S.W. (2d) 656; Texas Refining Co. v. Alexander (Tex. Civ.App.) 202 S.W. 131; Ray v. St. Louis Southwestern Ry. Co. (Tex.Civ.App.) 289 S.W. 1030 (writ refused); Pioneer Fireproof Const. Co. v. Hansen, 176 Ill. 100, 52 N.E. 17; note, 19 A.L.R. page 236."

Plaintiff, however, contends that the defendant used the written contract as a mere cloak to exercise such control over Cherry in the details of his work as to create a master-servant relationship despite the contract.

Cherry died as a result of the collision; depositions of other persons, however, were before the court on the motion for summary judgment. They reveal that Cherry would pick up bundles of papers at Denton to be delivered to dealers in the towns on his route, and mail sacks to be delivered to post offices on such route, and he had the privilege of delivery and did deliver papers to individual customers along the route.

Cherry was shown his route by his predecessor. He, however, could have worked the route "backwards" or in any way in his best judgment the bundles and mail sacks would be timely delivered; he was shown where to drop the bundles but the drop places were up to the dealer in each town; he was told to drop the mail sacks at the post offices in the towns; he was told not to put papers in mail boxes as that would be a violation of the law; he was required to fill out a "Special Transfer Statement" each month; it was "suggested" he collect from his individual subscribers monthly; he was not supposed to put circulars in papers; he was told what time the papers would be dropped in Denton and he was supposed to be on time to start his route; defendant would "fuss" at route men for putting circulars in papers, and would "fuss" if mail sacks or bundles were not delivered at the proper destination; a route man would be "fussed" at if he delayed delivery of the bundles and sacks while delivering his individual papers; for such conduct a route man could be fired; defendant had a right, never used, to stop papers in route if the dealer had not paid for them; a route man had no right to go into another route man's territory; if Cherry had been consistently late in delivering papers his contract could have been terminated; Cherry was supposed to sell papers at the suggested price, and if he had overcharged, his contract could have been terminated; Cherry's predecessor, Hinzman, testified that defendant told him "* * * that I had to make a certain schedule to the other agencies, and I had to get there whenever the papers got there and everything, where I could make the schedule, because the other agents around the cities had to have their papers in time." The witness was asked, "On what occasions did Mr. Davis (circulation representative) contact you, and for what reasons did he contact you during the time you had the route?" He answered, "Well, he would come up and see how I was doing, and if I needed him on advice, why, I would call

him or let him know, and he would come and contact me."

Defendant did not withhold any kind of taxes from Cherry's checks and did not carry Workmen's Compensation or other insurance for his benefit; if Cherry's route had been increased it would have required the making of a new contract; Cherry was not required to use defendant's receipt books but used them as a matter of convenience; none of defendant's agents ever went with Cherry on his route; Cherry furnished his own car or truck and paid all expenses; he hired and paid for whatever extra help he needed.

The record is voluminous, and the evidence set out above is admittedly a brief digest thereof.

■■ Defendant had a right to exercise such control over Cherry as was necessary to secure performance of the contract according to its terms and to accomplish the results contemplated thereby without thereby creating the relationship of master and servant, so long as defendant did not destroy Cherry's power of initiation nor undertake to control him in the means and manner of the performance of the work. 23 Tex.Jur. 547. We think the evidence merely shows that the defendant was exercising control to see that the work was being performed and results accomplished according to the terms of the written contract.

■ We are of the opinion the evidence goes no further than to show that defendant would "fuss" if certain things happened and would at times "suggest" that Cherry, or other route men similarily situated, do or not do certain things, and that defendant claimed the right to terminate the contract in the event certain "suggestions" were habitually ignored. The test is: "Did the defendant actually assume and exercise such detailed control over Cherry's physical conduct in the performance of the labor provided for in the contract as to make him a servant, even though the contract did not so

provide?" Elder v. Aetna Cas. & Surety Co., 149 Tex. 620 236 S.W.2d 611. Carter Publications Co. Inc. v. Davis, Tex.Civ. App., 68 S.W.2d 640, error refused; Texas Co. v. Wheat, 140 Tex. 468, 168 S.W.2d 632; Federal Underwriters Exchange v. Turner, Tex.Civ.App., 140 S.W.2d 885, error refused; Davis v. General Accident Fire & Life Assur. Corp., Tex.Civ.App., 127 S.W.2d 526.

■ We think the only reasonable conclusion to be drawn from the record before the court is that defendant did not assume and exercise such control over Cherry's physical conduct in the performance of the labor provided for in the contract as to make him a servant, employee or agent of defendant. Since the trial court would have been required to direct a verdict for the defendant if the case had been tried on its merits, it was not error to render judgment for defendant on summary proceedings.

The judgment is affirmed.

MASSEY, C. J., dissents.

MASSEY, Chief Justice (dissenting).

I respectfully dissent.

It seems to me that if the record upon the evidence be considered without inclusion of the contract entered into by Ray Nichols Cherry, the deceased, and Carter Publications, Inc., the defendant (by which the status of independent contractor for the former was agreed upon by and between themselves), there would be no doubt but that plaintiff Mid-Continent Freight Lines, Inc., would have made out a prima facie case of liability against the defendant. If so, the case so made would inhibit the entry of summary judgment against plaintiff. The contract would be evidence tendered in behalf of the defendant in denial or in rebuttal of the case so made out by the plaintiff, and it could not serve to destroy the prima facie case of the plaintiff unless its effect would be to conclusively rebut the

same.  I do not believe that the contract whether taken alone or in connection with undisputed evidence established, did conclusively rebut the prima facie case theretofore made by the plaintiff.  It follows, therefore, if I am correct in my opinion, that there existed for trial ultimate fact issues determinative of defendant's liability.

I would reverse the judgment and remand the cause for a trial on the merits.