JOHN ROSS *v.* THE POST PUBLISHING COMPANY.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued December 3, 1942—decided January 8, 1943.

*Philip Reich,* with whom, on the brief, was *Samuel Reich,* for the appellant (plaintiff).

*Raymond E. Baldwin,* with whom was *William H. Protheroe,* for the appellee (defendant).

JENNINGS, J. The plaintiff was injured by being thrown from the running board of a car as a result of the negligence of its operator, a newsboy engaged in delivering papers published by the defendant, and the question to be decided is the correctness of the trial court's conclusion that he was not at the time its agent.

The finding may be summarized as follows: The defendant is the publisher of the Bridgeport Post. It maintains branch offices in Bridgeport, each in charge of a branch manager. The papers are delivered to the branch offices where the branch managers sell them for cash at the rate of one cent each to newsboys. The newsboys in turn deliver the papers to customers on their routes. The customers or "readers" are obtained by the newsboys themselves, by solicitors employed by the defendant and also by direct application to the defendant. Unless the purchase was known to be for a questionable or unworthy purpose, newsboys could buy as many papers as they wanted and deliver them in any way and by any means they chose. The place of delivery, price and time and method of payment were arranged between the newsboy and the customers without interference by the defendant. The newsboys were not forbidden to sell other papers, magazines or

merchandise and in fact they did this. They also frequently exchanged customers and routes. The defendant enforced no fines, forfeitures or deductions against the boys for any purpose whatever. Notice of complaints made to the defendant of poor delivery or nondelivery was sent to the boy. No further action was taken except that, in the case of nondelivery, the defendant delivered the paper. Boys took vacations as they wished. Where this occurred or if the boy was ill he usually supplied his own substitute but, on request, the defendant did this.

The defendant kept a record of the names of these newsboys and held a small deposit in trust for most of them. They were urged to get new readers and were paid forty cents for each, receiving in addition prizes and entertainment based on the number obtained. Twice yearly they were requested to furnish a list of readers for the use of an independent circulation audit. For economy of time and effort each newsboy limited his own customers to a certain district, which was termed a route. Sometime in the past, the defendant had offered a low-priced limited accident insurance policy to stimulate the circulation of the paper. Insured readers could, if they so desired, pay the premium to the newsboys for delivery to the defendant. Neither the defendant nor the boys received any payment for this service.

On July 12, 1939, Julio Toraya took over the regular route of his brother Louis and, while delivering papers from a Ford roadster, negligently injured the plaintiff, who was in the exercise of due care.

The finding was made in great detail and with obvious care by an experienced trier yet the plaintiff has sought no less than seventy-three corrections and additions. However, no change in the finding, material to this appeal, can be made. The plaintiff's principal

complaint appears to be the description of the transaction between the newsboys and the defendant as a purchase and sale. Since the court found that the boy was not the agent of the paper, this is the ultimate fact in the case and the incidental reference to a sale cannot affect the result, which is to be determined on the subordinate facts.

The trial court found, as a matter of fact, that the newsboys, including Julio, were not employees or agents of the defendant. The cases cited in the briefs use the term independent contractor, rather than vendee. The former term is broader than the latter but the legal principles underlying the distinction are identical as far as the issues in this case are concerned. Those principles have been fully discussed and many of our cases analyzed in the recent cases of *Francis* v. *Franklin Cafeteria, Inc.*, 123 Conn. 320, 195 Atl. 198; *Caraher* v. *Sears, Roebuck & Co.*, 124 Conn. 409, 200 Atl. 324; and *Electrolux Corporation* v. *Danaher*, 128 Conn. 342, 23 Atl. (2d) 135. There is no dispute about the ultimate test. It is the right of general control of the means and methods used by the person whose status is involved. *Caraher* case, p. 413. Its application is difficult. *Electrolux* case, p. 351. In the absence of controlling circumstances, the question is one of fact. *Francis* case, p. 326.

In so far as precedents can be a guide, the facts of the *Electrolux* case are helpful. An examination of them will disclose that the control of the sales representatives in that case was much more extensive than that of the defendant of its newsboys here, yet the issue was held to be a question of fact. At page 349 of that case we say: "The gist of the finding in this case is that the plaintiff placed a vacuum cleaner in the hands of each of one hundred and twenty-five sales representatives and turned them loose. They

could go where they would, spend as much or as little time as they chose and use any methods which they thought would be effective. They were bound by no suggestions or directions of the plaintiff beyond the terms of the contract. These constituted no more than the partial and limited control referred to in *Norwalk Gaslight Co.* v. *Borough of Norwalk,* 63 Conn. 495, 524, 28 Atl. 32." Here there was no written contract or any control over the manner of delivery, which, so far as appears, might be on foot, on bicycles, by the use of automobiles, or in any other manner chosen by each boy. See *N. Y. Indemnity Co.* v. *Industrial Accident Commission,* 213 Cal. 43, 49, 1 Pac. (2d) 12. As to the fact that sometime in the past the defendant had sold insurance policies and the newsboys had collected the premiums, there is no finding that either Louis or Julio were engaged in this work. It is doubtful whether any claim would even have been made that newsboys buying papers for cash and selling them at a profit were the agents of the publishers were it not for the recent decisions on unemployment compensation. It is to be noted that here we are applying the general principles of agency and that there we are applying them in furtherance of the legislative policy disclosed in the Unemployment Compensation Act. This distinction affects, at least, the approach to the problem.

While no Connecticut case has been cited or found dealing with this precise question—the status of a newsboy—the decision of the trial court is in accord with the weight of authority. *Gall* v. *Detroit Journal Co.,* 191 Mich. 405, 409, 158 N.W. 36, 19 A.L.R. 1164 (written contract signed requiring adherence to routes and schedules); id., note, p. 1168; *Davis* v. *General Accident Fire & Life Assurance Corporation,* (Tex. Civ. App.) 127 S.W. (2d) 526, 529 (written contract, sal-

ary); *Birmingham Post Co.* v. *Sturgeon,* 227 Ala. 162, 168, 149 So. 74; *State Compensation Ins. Fund* v. *Industrial Accident Commission,* 216 Cal. 351, 356, 14 Pac. (2d) 306; *Oklahoma Publishing Co.* v. *Greenlee,* 150 Okla. 69, 71, 300 Pac. 684.

The plaintiff cites two cases on this point. In *Salt Lake Tribune Publishing Co.* v. *Industrial Commission,* 99 Utah 259, 102 Pac. (2d) 307, and *Matter of Scatola* v. *Bronx Home News Publishing Co.,* 257 App. Div. 471, 14 N.Y.S. (2d) 55, affirmed, 282 N.Y. 689, 26 N.E. (2d) 815, the courts reached the opposite result but it was on the basis that there was substantial evidence supporting the factual conclusion of the commission. Both cases arose under the unemployment compensation laws and contained other distinguishing features. It is to be noted that in all such cases as *Kinsman* v. *Hartford Courant Co.,* 94 Conn. 156, 108 Atl. 562; *Jack & Jill, Inc.* v. *Tone,* 126 Conn. 114, 9 Atl. (2d) 497; *Robert C. Buell & Co.* v. *Danaher,* 127 Conn. 606, 18 Atl. (2d) 697; and *Electrolux Corporation* v. *Danaher,* supra, also relied on by the plaintiff, the decision of the trial court on the question of fact was sustained. Here the plaintiff is endeavoring to overturn an adverse decision of that character. For the reasons stated we hold that the trial court could reasonably have found that no agency existed. The judgment was correct.

There is no error.

In this opinion the other judges concurred.