## JONATHAN M. KELLER ET AL. *v.* ROZ-LYNN BECKENSTEIN ET AL.
## (AC 29332)

Harper, Lavine and Robinson, Js.

Argued January 12—officially released October 13, 2009

*Richard P. Weinstein*, with whom was *Nathan A. Schatz*, for the appellants (plaintiffs).

*Michael P. Berman*, with whom was *Suzanne LaPlante*, for the appellees (named defendant et al.).

*Opinion*

HARPER, J. The plaintiffs, Jonathan M. Keller and a group of corporate entities,[1] appeal from the judgment of the trial court, *Stevens, J.*, rendered on the granting of the motions for summary judgment filed by the defendants, Roz-Lynn Beckenstein and a group of corporate

---

[1] In addition to Keller, the plaintiffs include Fremont Group, LLC; Fremont 155, LLC; Fremont 131, LLC; Fremont 183, LLC; Freemont Riverview, LLC; Freemont Prestige Park, LLC; and 654 Tolland Street, LLC. We refer to them collectively as the plaintiffs except as otherwise noted.

entities,[2] and appeal from the judgment of the trial court, *Alander, J.*, rendered following the granting of the motion to strike filed by the defendants. On appeal, the plaintiffs claim that the court improperly granted (1) the motions for summary judgment because a genuine issue of material fact existed as to the first count as to whether the defendants were liable for a breach of contractual representations and warranties by commencing litigation against the plaintiffs, and (2) the motion to strike because the complaint sufficiently alleged a breach of the implied covenant of good faith and fair dealing and a violation under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. We affirm the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. Fremont Group, LLC, entered into a real estate contract with the defendants on May 25, 2000, for the purchase of numerous pieces of property. Fremont Group, LLC, acquired the properties for a purchase price of $56.9 million and distributed the properties among the plaintiff corporate entities. Two years later, in October, 2002, the defendants commenced litigation against the plaintiffs in relation to the real estate contract. The action was dismissed. In October, 2003, the defendants recommenced litigation against the plaintiffs in relation to the real estate contract. See *Beckenstein Enterprises-Prestige Park, LLC* v. *Keller*, Superior Court, judicial district of Waterbury,

---

[2] In addition to Roz-Lynn Beckenstein, the plaintiffs commenced this action against Arthur Beckenstein; Beckenstein Enterprise-Prestige Park, LLC; 155 Realty; Riverview Square, LLC; Riverview II, LLC; and Tolland Enterprises. We refer to them collectively as the defendants. On February 19, 2008, this court granted the motions to dismiss filed by Roz-Lynn Beckenstein and Arthur Beckenstein and dismissed the appeal as it relates to the Beckensteins, and they are no longer involved in this appeal. As a result, counts three and four of the complaint, which were directed solely at the Beckensteins, are no longer issues on appeal.

Docket No. X06-CV-030183487-S (*Beckenstein* v. *Keller* action); *Beckenstein Enterprises-Prestige Park, LLC* v. *Keller*, 115 Conn. App. 680, 974 A.2d 764, cert. denied, 293 Conn. 916, 979 A.2d 488 (2009). The defendants had alleged tortious interference with contractual relations, breach of the implied duty of good faith and fair dealing, civil conspiracy and a violation of CUTPA.[3] In response to the litigation filed by the defendants, the plaintiffs commenced this action against the defendants. The plaintiffs' second amended complaint consisted of five counts. In relevant part, the counts at issue on appeal are (1) count one, alleging breach of contract; (2) count two, alleging breach of the implied covenant of good faith and fair dealing that imposed an obligation on the defendants not to repudiate the real estate contract and terms of sale; and (3) count five, alleging a violation of CUTPA on the ground that the actions of the defendants violated public policy and were immoral, oppressive and unscrupulous.[4]

On March 18, 2005, the defendants filed a motion to strike counts two and five on the ground that the allegations therein were not legally sufficient to state a claim on which relief could be granted. On March 24, 2005, the plaintiffs filed their objection to the defendants' motion to strike, and, thereafter, a hearing was held on May 16, 2005. On June 8, 2005, Judge Alander issued a memorandum of decision granting the defendants' motion to strike. On June 29, 2005, the defendants

---

[3] See *Beckenstein Enterprises-Prestige Park, LLC* v. *Keller*, supra, 115 Conn. App. 684, in which the relevant facts were that Beckenstein Enterprises-Prestige Park, LLC, "instituted the . . . action, alleging that in the months preceding [Robert Beckenstein's] death and in the time thereafter, [Jonathan M. Keller], acting alone and in concert with [Dennis Smith, in-house counsel], used the opportunities presented by the sale of the Beckenstein properties to enrich himself and the entities he controlled."

[4] The court concluded that counts three and four, respectively alleging negligent misrepresentation and intentional misrepresentation, were barred by the statute of limitation, and, thereafter, granted the defendants' motions for summary judgment on those two counts. See footnote 2.

filed a motion for judgment as to counts two and five, which was granted on July 19, 2005. On July 26, 2005, the defendants filed their answer denying the allegations of the remainder of the complaint and special defenses to the plaintiffs' second amended complaint.

On August 3, 2007, the defendants filed motions for summary judgment. In relevant part, the defendants asserted that the plaintiffs' pleadings, affidavits and other proof submitted demonstrated that there was no genuine issue as to any material fact in relation to count one's breach of contract allegation. On August 23, 2007, the plaintiffs filed a revised third amended complaint with changes to the allegations of count one. Count one, as amended, alleged that the defendants "breached the representations and warranties relating to the contracts of sale for which the plaintiffs have sustained damage of litigation costs and reasonable attorney's fees of defending these matters." The next day, on August 24, 2007, the plaintiffs filed their opposition to the defendants' motions for summary judgment. In response to the plaintiffs' third amended complaint, the defendants maintained their original motions for summary judgment, and, on September 17, 2007, Judge Stevens issued an oral ruling granting the defendants' motions. The court concluded that "the submissions by the parties indicate an undisputed fact. That fact is that there were no misrepresentations made in the sales contract."

On September 24, 2007, the plaintiffs filed a motion for reargument and reconsideration. The plaintiffs asserted that the issue of the viability of their breach of contract claim did not turn on whether there was a misrepresentation at the time the real estate transaction closed. They argued that because the defendants made certain representations and warranties that the real estate contract was valid and binding, the defendants breached the contract when they filed litigation, the

*Beckenstein* v. *Keller* action, challenging the contract. On November 2, 2007, the court issued a ruling granting the plaintiffs' motion for reargument and reconsideration. The court, thereafter, adopted and affirmed its September 17, 2007 oral ruling in a memorandum of decision that stated, inter alia, that "there is no dispute that the plaintiffs do not claim (and cannot prove) that any representation of the sales agreement was false or that any warranty of the agreement was breached. On the basis of this undisputed fact, the court granted the defendants' motions for summary judgment on the first count of the complaint alleging breach of contract." This appeal followed. Any additional facts will be set forth as necessary.

I

First, the plaintiffs[5] claim that the court improperly granted the defendants' motions for summary judgment. Specifically, the plaintiffs claim that a genuine issue of material fact exists with regard to count one as to whether the defendants are liable for a breach of contractual representation and warranties on the basis of having brought the *Beckenstein* v. *Keller* action. We are unpersuaded.

"We apply a well settled standard of review to the plaintiff's claim that the court improperly rendered summary judgment. Practice Book § 17-49 provides that

[5] In ruling on the motions for summary judgment, Judge Stevens determined that Keller and Fremont 183, LLC, lacked standing to assert any claims under the first count of the complaint for breach of contract. Therefore, for purposes of part I of this opinion only, our reference to the plaintiffs excludes Keller and Fremont 183, LLC.

In addition, during the hearing on the motions for summary judgment, the court declined to consider whether the plaintiffs, with the exception of Fremont Group, LLC, Fremont 183, LLC, and Keller, had standing to bring a breach of contract claim because the group of corporate entities was not a party to the contract. The court did not consider the issue because it was an issue of fact, and, for purposes of summary judgment, the court does not engage in fact-finding. Whether the group of corporate entities had standing is not an issue raised on appeal.

summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Boyne* v. *Glastonbury*, 110 Conn. App. 591, 595–96, 955 A.2d 645, cert. denied, 289 Conn. 947, 959 A.2d 1011 (2008).

"[A] party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough . . . for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of [an issue of] material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." Id., 596. "The facts at issue [in the context of summary judgment] are those alleged in the pleadings. . . . The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise." (Citation omitted; internal quotation marks omitted.) *Arnone* v. *Connecticut Light & Power Co.*, 90 Conn. App. 188, 193–94, 878 A.2d 347 (2005). "A material fact is a fact which will make a difference in the result of the case. . . . [I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but

rather to determine whether any such issues exist." (Citations omitted; internal quotation marks omitted.) *Curley* v. *Kaiser*, 112 Conn. App. 213, 220, 962 A.2d 167 (2009). "On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." Id.

We now set forth the legal principles relevant to the issue before us. "The elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." (Internal quotation marks omitted.) *American Express Centurion Bank* v. *Head*, 115 Conn. App. 10, 15–16, 971 A.2d 90 (2009).

The plaintiffs alleged that the defendants entered into a real estate contract for the sale of several properties to Fremont Group, LLC, for an agreed purchase price of $56.9 million. They alleged that the plaintiffs took title to the properties and, under the contract, received representations, warranties and assurances from the defendants. They alleged that they have been in possession of the properties since the real estate closings. They alleged that the defendants sued the plaintiffs, challenging the negotiated terms of the real estate contract.[6] The plaintiffs alleged that but for the defendants' representations and warranties, the plaintiffs would have never purchased the properties. Specific to count one, via their third amended complaint, they alleged that the defendants "breached the representations and warranties relating to the contract of sale for which the plaintiffs have sustained damages of litigation costs and reasonable attorney's fees of defending these matters."

---

[6] See *Beckenstein Enterprises-Prestige Park, LLC* v. *Keller*, supra, 115 Conn. App. 683–84.

At the hearing on the motions for summary judgment, the defendants asserted that the plaintiffs' alleged claim for breach of contract rested solely on the defendants having commenced the *Beckenstein* v. *Keller* action against the plaintiffs. The defendants asserted that the plaintiffs did not allege in their third amended complaint that the defendants lacked authority to negotiate the real estate contract, nor did they allege that the defendants' action was instituted in bad faith, without probable cause or without merit. In turn, the plaintiffs argued that the defendants negotiated the real estate contract, and, as a result, the defendants were aware of the contract's terms. The plaintiffs argued that by the terms of the contract, the defendants represented that the contract was valid and binding. The plaintiffs argued that the *Beckenstein* v. *Keller* action defeated the purpose of having a representation that the contract was valid and binding because the defendants were engaging in litigation that disputed the validity and binding effect of the contract. They argued that as a result the bringing of the *Beckenstein* v. *Keller* action constituted a breach of contract.

By way of an oral ruling after the hearing on the defendants' motions for summary judgment, the court noted that the submissions by the parties indicated an undisputed fact, which was that there were no misrepresentations made in the real estate contract. The court concluded that the plaintiffs neither alleged nor provided proof that any of the representations or warranties under the contract were erroneous, wrong or false. The court stated that the focal point of the plaintiffs' complaint was not based on what was asserted in the real estate contract but was based on what was asserted in an action filed against the plaintiffs after the contract was consummated. It noted that neither party indicated that a party was moving to rescind the contract, nor had either party argued that there were deficiencies in

what was asserted in the contract that necessitated the contract to be voided or that the properties had to be returned to the defendants. The court concluded that the *Beckenstein* v. *Keller* action did not represent a breach of contract because no provision in the contract, either expressed or implied, was breached, as a matter of law, by the action. It noted that the plaintiffs' allegations may be the basis for some cause of action but that the allegations could not form the basis of a breach of contract claim because the plaintiffs were not contesting the representations made under the contract.

The plaintiffs then filed a motion for reargument and reconsideration, which the court granted. On November 2, 2007, in its memorandum of decision ruling on the plaintiffs' motion, the court adopted and affirmed its oral ruling. In its memorandum of decision, the court noted that there was "no dispute that the plaintiffs [did] not claim (and cannot prove) that any representation of the sales agreement was false or that any warranty of the agreement was breached." The court noted that "[t]he plaintiffs claim[ed] that there were falsities asserted by the defendants in the *Beckenstein* v. *Keller* [action] and that these false statements support[ed] their breach of contract claim." The court stated that the plaintiffs' motion focused on an issue that was not alleged in the complaint, which alleged breached representations of the contract and not false representations in the *Beckenstein* v. *Keller* action. The court stated that a "breach of contract means doing something proscribed by a contract or not doing something required by a contract." The court stated that a "mere assertion of a position or a claim inconsistent with a contractual representation is not a breach of the contract when the assertion itself is not actually precluded by any provision of the contract." The court concluded that "a breach of contract action cannot be maintained when the plaintiffs cannot identify any contract provision

breached by the defendants' conduct." It concluded that there was "nothing in the agreement precluding the defendants from bringing an action . . . ." On appeal, the plaintiffs argue that the defendants' bringing of the *Beckenstein* v. *Keller* action gave rise to a breach of contract claim. The plaintiffs assert that because the defendants were fully aware of the terms of the contract, the defendants breached the contract by later claiming improprieties therein and by bringing the *Beckenstein* v. *Keller* action.

Upon our review of the record, we conclude that the court properly granted the defendants' motions for summary judgment. As previously noted, to survive a motion for summary judgment, the facts as alleged in the pleadings must be material to the outcome of the case. The elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages. See *American Express Centurion Bank* v. *Head,* supra, 115 Conn. App. 15–16. The facts alleged in the plaintiffs' complaint failed to satisfy the threshold test to maintain a breach of contract cause of action. The plaintiffs' breach of contract claim undisputedly rests on an allegation that the defendants brought a lawsuit against the plaintiffs, which contradicted representations that the defendants made in the contract. Nonetheless, the plaintiffs do not allege that the defendants were prohibited by contract from making assertions contrary to what was provided for within the contract, nor do they allege that the defendants were prohibited by contract from bringing any litigation in relation to the contract. We agree with the court that absent a provision in the contract prohibiting the defendants from bringing litigation or from challenging the contract, making an assertion contrary to the contract does not support a cause of action for breach of contract. The plaintiffs, as a matter of law, did not present any genuine issues of material fact.

On the basis of the foregoing analysis, we conclude that the court properly granted the motions for summary judgment.

## II

Next, the plaintiffs claim that the court improperly granted the defendants' motion to strike. Specifically, the plaintiffs claim that (1) count two sufficiently alleged a breach of the implied covenant of good faith and fair dealing because the defendants brought baseless litigation in relation to the contract, and (2) count five sufficiently alleged a violation of CUTPA because the defendants commenced a specious action against the plaintiffs. We will address each claim in turn.

At the outset, we note that "[t]he purpose of a motion to strike is to challenge the legal sufficiency of the allegations of a complaint for failure to state a claim on which relief can be granted. Practice Book § 10-39. The motion admits all facts that are well pleaded . . . but does not admit legal conclusions or the truth or accuracy of opinions. . . . On a motion to strike, the trial court's inquiry is to ascertain whether the allegations in each count, if proven, would state a claim on which relief could be granted. Practice Book § 10-39 (a). A motion to strike is properly granted if the complaint alleges mere conclusions of law that are not supported by the facts alleged." (Citations omitted.) *Bennett* v. *Connecticut Hospice, Inc.*, 56 Conn. App. 134, 136–37, 741 A.2d 349 (1999), cert. denied, 252 Conn. 938, 747 A.2d 2 (2000).

"In an appeal from a judgment granting a motion to strike, we operate in accordance with well established rules. Because a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review of the court's ruling on the [defendant's motion] is plenary.

. . . [W]e take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency." (Internal quotation marks omitted.) Id., 137.

## A

The plaintiffs claim that the court improperly concluded that count two failed to state a legally sufficient cause of action. Specifically, the plaintiffs claim that it was improper for the court to conclude that count two failed to allege that the defendants acted in bad faith and failed to allege facts to establish that the defendants repudiated the real estate contract. We disagree.

"The relevant legal principles are well established. [I]t is axiomatic that the . . . duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship. . . . In other words, every contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement. . . . The covenant of good faith and fair dealing presupposes that the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party's discretionary application or interpretation of a contract term. . . . To constitute a breach of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." (Internal quotation marks omitted.) *Landry* v. *Spitz*, 102 Conn. App. 34, 42, 925 A.2d 334 (2007).

"Bad faith has been defined in our jurisprudence in various ways. Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest

mistake as to one's rights or duties, but by some interested or sinister motive. . . . Bad faith means more than mere negligence; it involves a dishonest purpose. . . . [B]ad faith may be overt or may consist of inaction, and it may include evasion of the spirit of the bargain . . . ." (Citations omitted; internal quotation marks omitted.) Id., 42–43.

In count two, the plaintiffs alleged that "[t]he defendant entities breached the implied covenant of good faith and fair dealing which would impose the obligation not to repudiate the contract[s] and terms of sales referenced aforesaid, which breach has caused the plaintiffs special loss and damage." In its memorandum of decision, the court noted that "the plaintiffs claim[ed] that the defendants, by filing [the *Beckenstein* v. *Keller* action], have breached an implied covenant of good faith and fair dealing 'which would impose the obligation not to repudiate' the sales contract. Specifically, the plaintiffs contend[ed] that by filing a lawsuit related to the sales contracts, the defendants have in effect repudiated those sales contracts and thereby violated the [original contract's] implied covenant of good faith and fair dealing." The court concluded that the plaintiffs failed to allege that the defendants acted in bad faith under the contract. It further concluded that "the plaintiffs [had] merely alleged that the defendants have brought [the *Beckenstein* v. *Keller* action] seeking damages against the plaintiffs in which the defendants allege[d] that they were not informed of certain facts related to the sale of property. The plaintiffs allege[d] no fraud, misrepresentation or improper motive on the part of the defendants." The court also concluded that count two failed because the plaintiffs failed to allege that the defendants repudiated the contract, notwithstanding their allegation that the contract had been performed.

Our plenary review of the plaintiffs' claim, the record and briefs, in the light most favorable to the plaintiffs, reveals that the court properly struck count two for failure to state a legally sufficient cause of action. The court was correct in concluding that count two failed to allege any fact to establish that the defendants, in commencing the *Beckenstein* v. *Keller* action, acted in bad faith. The plaintiffs merely made conclusory statements of law without any factual allegations to support such conclusions. See *Fidelity Bank* v. *Krenisky*, 72 Conn. App. 700, 718–19, 807 A.2d 968, cert. denied, 262 Conn. 915, 811 A.2d 1291 (2002). Mere conclusions of law, without factual support, are not enough to survive a motion to strike. Accordingly, the court acted properly in striking the plaintiffs' count two.

B

Last, the plaintiffs claim that the court improperly concluded that count five failed to state a legally sufficient cause of action. Specifically, the plaintiffs claim that it was improper for the court to conclude that count five failed to allege a CUTPA violation on the ground that bringing the *Beckenstein* v. *Keller* action was hardly unfair, unethical or unscrupulous. We disagree.

"It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3)

whether it causes substantial injury to consumers [competitors or other businessmen]. . . .

"All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . . Thus a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy. . . . Furthermore, a party need not prove an intent to deceive to prevail under CUTPA." (Internal quotation marks omitted.) *H & L Chevrolet, Inc.* v. *Berkley Ins. Co.*, 110 Conn. App. 428, 441–42, 955 A.2d 565 (2008).

Specific to count five, the plaintiffs alleged that "[t]he defendant entities were in the business of buying and selling real estate . . . for many years and the defendants acted in regard to the acts complained of herein by and through the individual defendants [Roz-Lynn Beckenstein and Arthur Beckenstein]." They further alleged that "[t]he actions of the defendants violated public policy, were immoral, oppressive and unscrupulous, and caused substantial injury to consumers, competitors and other businessmen, thereby violating [CUTPA], as made and provided."

At the hearing on the motion to strike, the plaintiffs stated that they were claiming a violation of CUTPA because the defendants attempted to repudiate the contract by bringing litigation in relation to the contract's terms. They alleged that the defendants engaged in an unfair trade practice when they claimed in *Beckenstein* v. *Keller* that the Beckensteins were not authorized to negotiate the real estate contract. The plaintiffs also asserted that the defendants' allegations in the *Beckenstein* v. *Keller* action constituted a "bait and switch," because they first said that the Beckensteins were authorized and now they are saying they were not. To

the contrary, the court noted: "It's one thing to say the parties are duly authorized when they are really not, and it's another thing to say the deal they cut wasn't fair to us and illegal." In addition, the plaintiffs conceded before the court that there was "no claim of false representations to [them] . . . in connection with the contract."

In its memorandum of decision, the court noted that "the plaintiffs claim[ed] that the defendants, by filing their prior lawsuit, violated [CUTPA]. The plaintiffs maintain[ed] that the defendants engaged in an unfair trade practice by giving assurances to the plaintiffs to induce them to purchase the subject properties and then subsequently challenging the validity of the sale transactions by attacking in a subsequent lawsuit the assurances provided." (Citation omitted.) The court concluded that the allegations of the fifth count did not constitute an unfair trade practice in violation of CUTPA. The court referenced the criteria for a CUTPA violation, and noted that the plaintiffs relied on the second criteria and failed to reveal how the defendants' acts were an immoral, unethical, oppressive or unscrupulous practice. It further concluded that the plaintiffs' allegations failed to support a characterization that a "bait and switch" occurred "in that the defendants first gave representations, warranties and assurances that they later reneged on." The court noted that the only specific representation or assurance alleged in the complaint was a representation that the defendants had the authority to consummate the real estate transaction and execute the related documents. The court concluded that "[n]either the plaintiffs nor the defendants assert that the defendants in fact lacked such authority." The court further concluded that the real estate transactions were consummated, and, in reference to the *Beckenstein* v. *Keller* action, "[t]he fact that the defendants subsequently sued the plaintiffs, alleging a

secret relationship with the defendants' in-house counsel with respect to the [real estate contract], which wrongfully interfered with the defendants' rights is hardly unfair, unethical or unscrupulous. To find otherwise would turn every lawsuit challenging a consummated transaction into a violation of CUTPA."

On appeal, the plaintiffs argue that the court ignored the essential allegations of their complaint that distinguished the defendants' action from every other action. The plaintiffs assert that the defendants brought a specious lawsuit, the *Beckenstein* v. *Keller* action, to challenge the validity and propriety of a transaction that they had consummated. The plaintiffs then cite *Gebbie* v. *Cadle Co.*, 49 Conn. App. 265, 278–79, 714 A.2d 678 (1998), for the proposition that a "subsequent repudiation of an agreement that one has already acknowledged and ratified as to its existence and due execution is conduct that is actionable under CUTPA." They assert that the defendants "brought litigation to challenge various aspects of a consummated transaction which they had previously ratified, after having given the plaintiffs assurances in regard to the validity of those very contractual obligations."

Our plenary review of the claim, record and briefs, in the light most favorable to the plaintiffs, leads us to the same conclusion as the court. The allegations of the fifth count failed to state an actionable unfair trade practice claim that violates CUTPA. First, we set out to distinguish *Gebbie* from the present case. In *Gebbie*, the defendant refused to honor and effectuate an agreement after a clear acknowledgment by the defendant of its obligations under the agreement. *Gebbie* v. *Cadle Co.*, supra, 49 Conn. App. 279. The defendant in *Gebbie* openly acknowledged the existence of the agreement but refused to honor it, which resulted in the plaintiffs seeking redress in an action before the

court to have the agreement enforced. Id. The circumstances present in *Gebbie* do not exist in the present case. Here, both parties honored the contract, and the plaintiffs have not alleged facts[7] to show that the defendants stopped honoring the terms of the contract. Second, as previously noted, the court concluded that "[t]he fact that the defendants subsequently sued the plaintiffs, alleging a secret relationship with the defendants' in-house counsel with respect to the [real estate contract], which wrongfully interfered with the defendants' rights is hardly unfair, unethical or unscrupulous." We agree with the court's conclusion. Accordingly, we conclude that the court properly struck the plaintiffs' count five.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] "A claim under CUTPA must be pleaded with particularity to allow evaluation of the legal theory upon which the claim is based." *S.M.S. Textile Mills, Inc.* v. *Brown, Jacobson, Tillinghast, Lahan & King, P.C.*, 32 Conn. App. 786, 797, 631 A.2d 340, cert. denied, 228 Conn. 903, 634 A.2d 296 (1993).