# ANNE MARIE ROY *v.* ANDREW G. BACHMANN ET AL.
## (AC 30522)

Bishop, Harper and West, Js.

Argued October 23, 2009—officially released May 18, 2010

*Anthony V. Federice*, for the appellants (named plaintiff et al.).

*Christopher L. Goings*, with whom, on the brief, was *Collin Seguin*, certified legal intern, for the appellees (defendants).

*Opinion*

BISHOP, J. In this appeal, we must determine whether the exclusivity rule of the Workers' Compensation Act[1] (act); General Statutes § 31-275 et seq.; shields the owners of a parking lot that they leased to a corporation, in which they were majority stockholders and officers, from liability for damages arising from injuries sustained by an employee of the corporation during the course of her employment. The plaintiffs[2] Anne Marie

---

[1] General Statutes § 31-284 (a) is the exclusivity provision of the act and provides that an employer, although required to compensate an employee as set forth in the act for death or personal injury sustained in the course of employment, is not liable in a civil action for damages arising from that injury.

[2] On April 5, 2007, the plaintiff Anne Marie Roy filed a complaint against the defendants, Andrew G. Bachmann and Jane B. Bachmann, that sounded in negligence. Subsequently, Steven Roy filed a motion to be joined as a party plaintiff, which was granted on June 29, 2007, and, by substituted complaint, he joined the action, alleging a loss of consortium as a result of the defendants' alleged negligence. Therefore, we will refer to the Roys as the plaintiffs.

Roy and Steven Roy appeal from the summary judgment rendered by the trial court in favor of the defendants, Andrew G. Bachmann and Jane B. Bachmann.[3] The plaintiffs contend that the court improperly determined that the defendants were Anne Marie Roy's employer and that, accordingly, their action was barred by the exclusivity provision of the act. Although the court accurately concluded that Connecticut has rejected the dual capacity doctrine as an exception to the exclusivity rule, it should not have been a factor in the court's reasoning because the record unequivocally reveals that Anne Marie Roy's employer was the Dymax Corporation (Dymax) at the time of her injury. We conclude that, because the defendants were not covered by the exclusivity provision of the act as Anne Marie Roy's employer, summary judgment should not have been granted. Accordingly, we reverse the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. On September 12, 2005, Anne Marie Roy was employed by Dymax. On that date, she sustained injuries, including a fractured hip, when she fell in the parking lot located at 51 Greenwoods Road, Torrington—Dymax' place of business. At the time of the incident that led to her injuries, Anne Marie Roy was in the course of her employment with Dymax. She was paid benefits under our workers' compensation

---

[3] During oral argument before this court, counsel for the defendants indicated that Andrew G. Bachmann had died during the pendency of the case. Subsequently, we, sua sponte, ordered counsel for the defendants to file a motion to substitute the personal representative of the estate of Andrew G. Bachmann with this court. The defendants filed a motion to substitute Jane B. Bachmann, executrix of the estate of Andrew G. Bachmann, as the personal representative of Andrew G. Bachmann in this matter. The plaintiffs consented to the substitution. Accordingly, we granted the motion for change in party but for clarity have preserved the original identity of the parties in the text of the opinion. See General Statutes §§ 45a-206, 52-599 and 52-600; *Yaeger* v. *Dubno*, 188 Conn. 206, 207 n.1, 449 A.2d 144 (1982); *Equitable Trust Co.* v. *Plume*, 92 Conn. 649, 654, 103 A. 940 (1918).

statutory scheme by Dymax. The defendants owned the parcel of land located at 51 Greenwoods Road and leased it to Dymax. The plaintiffs brought this action against the defendants, alleging negligence and loss of consortium. On July 23, 2008, the defendants moved for summary judgment on the ground that the plaintiffs' action was barred by the exclusivity rule of the act. By memorandum of decision filed October 27, 2008, the court granted the defendants' motion for summary judgment and rendered judgment in their favor. The plaintiffs filed a motion to reargue, which the court denied. This appeal followed. Additional facts will be set forth as necessary.

As a preliminary matter, we set forth the well settled standard of review applicable to a trial court's decision to grant a motion for summary judgment. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . .

"[T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary."

(Citations omitted; internal quotation marks omitted.) *Keller* v. *Beckenstein*, 117 Conn. App. 550, 556–58, 979 A.2d 1055, cert. denied, 294 Conn. 913, 983 A.2d 274 (2009).

Connecticut's statutory scheme for workers' compensation provides a framework for an employee who sustains a work-related injury to receive prescribed benefits without having to prove fault. In return, the employee is barred from bringing a third party claim against either a fellow employee or the employer.[4] See General Statutes § 31-284 et seq. The trade-off between an employee who sustains a work-related injury and the employer does not prevent such an employee from bringing an action against a third party tortfeasor. Indeed, General Statutes § 31-293 provides that an employer who has paid workers' compensation benefits may intervene in any such action in order to seek recovery of the amounts paid to the employee from any judgment he or she may obtain in the third party action.[5]

In our statutory workers' compensation scheme there are only two exceptions to the act's exclusivity provision. According to the terms of General Statutes § 31-293a, the right to workers' compensation is an employee's exclusive remedy "unless such wrong was wilful

---

[4] The act defines an employer as "any person, corporation, limited liability company, firm, partnership, voluntary association, joint stock association, the state and any public corporation within the state using the services of one or more employees for pay, or the legal representative of any such employer . . . ." General Statutes § 31-275 (10).

[5] General Statutes § 31-293 (a) allows a person who has sustained a compensable injury to pursue an action at law against a third party, who is not the employer, for any damages for which the third party may be liable. It also provides in relevant part that "any employer . . . having paid, or having become obligated to pay, compensation under the provisions of this chapter may bring an action against such [third party] to recover any amount that he has paid or has become obligated to pay as compensation to the injured employee. . . ." Dymax intervened as a plaintiff in this action in order to assert its rights pursuant to § 31-293, to recoup from Anne Marie Roy, the amount of the workers' compensation paid to her from any judgment she may secure against the defendants.

or malicious or the action is based on the fellow employee's negligence in the operation of a motor vehicle as defined in section 14-1. . . ." Additionally, our Supreme Court has recognized exceptions for a minor who has been illegally employed; see *Blancato* v. *Feldspar Corp.*, 203 Conn. 34, 522 A.2d 1235 (1987); and for intentional torts committed by an employer upon an employee. See *Jett* v. *Dunlap*, 179 Conn. 215, 425 A.2d 1263 (1979), as further elucidated in *Suarez* v. *Dickmont Plastics Corp.*, 229 Conn. 99, 639 A.2d 507 (1994).

Some other states, but not Connecticut, have recognized an additional exception to the exclusivity provisions of their workers' compensation laws to permit a third party action against an employer or fellow employee who causes injury to an employee while the employer or fellow employee is acting in a nonemployment capacity. This exception, known as the dual capacity doctrine, is implicated only when the liability defendant is the employer or a fellow employee, both otherwise immune from tort liability by the exclusivity provisions of workers' compensation statutes. Cases dealing with the dual capacity doctrine make it plain that it only comes into play when an employee brings a third party claim against his or her employer or fellow employee. Noted workers' compensation commentator Arthur Larson has described the dual capacity doctrine as follows: "An employer may become a third person, vulnerable to tort suit by an employee, if—and only if—it possesses a second persona so completely independent from and unrelated to its status as employer that by established standards the law recognizes that persona as a separate legal person." 6 A. Larson, Workers' Compensation Law (2009) § 113.01 [1]. It is central to the cases involving the dual capacity doctrine that the identity of the defendant as the employer or fellow employee is not questioned. The issue in these cases, rather, is whether, in spite of the exclusivity provisions

of workers' compensation law, the defendant may yet be liable in some other capacity than that of employer or fellow employee.

In *Panaro* v. *Electrolux Corp.*, 208 Conn. 589, 593, 545 A.2d 1086 (1988), our Supreme Court expressly rejected the dual capacity doctrine in a case involving both a fellow employee and the employer. Thus, if this were a case in which the defendants were the employer seeking the protection of the exclusivity provision of the act, and the plaintiffs were seeking an exception to that exclusivity provision on the basis of the dual capacity doctrine, the court's rendering of summary judgment would have been appropriate. However, because Anne Marie Roy was employed by Dymax and not the defendants, her claim against the defendants is not one against her employer at all. Thus, the dual capacity doctrine should have played no role in the court's summary disposition.[6]

---

[6] Although our review of decisional law has found no Connecticut appellate opinion directly on point, decisions from other jurisdictions support the notion that, given the underlying facts we face, the dual capacity doctrine is not implicated because Anne Marie Roy's employer and the defendants are not, by legal definition, one and the same. In a case with significant parallels to the one we face, the Michigan Supreme Court, in *Bitar* v. *Wakim*, 456 Mich. 428, 572 N.W.2d 191 (1998), declined to reach the dual capacity doctrine because the employer and the tort defendant were not the same person. There, the plaintiff worked for the Beirut Bakery, Inc., a Michigan corporation whose stock was wholly owned by the tort defendant, Iskandar Wakim. Id., 430. Wakim also personally owned the property where the bakery was located and leased the property to the bakery. Id. In reversing the judgment of the Court of Appeals, which had affirmed the trial court's dismissal of the action, the Michigan Supreme Court concluded: "Mr. Wakim and the Beirut Bakery were separate legal entities at the time of [the plaintiff's] fall. As the employer, the bakery should not be sued because of the exclusive remedy provision. However, the Court of Appeals erred when it allowed Mr. Wakim to use this provision to protect himself from suit as the premises owner." Id., 435. In reaching this conclusion, the court commented as well that "[b]ecause Mr. Wakim is not to be viewed as [the plaintiff's] employer, we do not need to reach Mr. Wakim's defense under the dual capacity doctrine." Id., 434.

To similar effect, the Illinois Appellate Court has stated that it would be inappropriate to consider the dual capacity doctrine where the employer

At the time of her injury, Anne Marie Roy was employed by Dymax, which, as her employer, paid her workers' compensation benefits. These facts were alleged by Anne Marie Roy in her substituted complaint and admitted by the defendants.[7] Additionally, the

was a separate legal entity from the tort defendant. See *Guerino* v. *Depot Place Partnership*, 273 Ill. App. 3d 27, 652 N.E.2d 410, leave to appeal denied, 163 Ill. 2d 556, 657 N.E.2d 620 (1995). In *Guerino*, the plaintiff sustained an injury while in the employ of the Concrete Doctor, Inc., a corporation from which he received workers' compensation benefits. Id., 29. He thereafter sued the individual partners and the partnership that leased the premises housing the Concrete Doctor, Inc. Two of the three partners also had substantial stock interest and involvement in the operations of the Concrete Doctor, Inc. Id. The reviewing court was confronted with the question of whether the partnership should enjoy immunity from suit based on the exclusivity provisions of the Illinois workers' compensation act.

The court observed: "The dual capacity doctrine, as an exception to the exclusive-remedy provision of section 5 (a) of the [Workers' Compensation] Act, only comes into play when the defendant's identity has merged into that of employer, or agent or employee of the employer." Id., 32. The court then cited with approval its statement in an earlier case that a defendant "cannot choose when to disregard his corporate form or business at his own convenience. The dual persona doctrine does not need to be applied when the corporate employer is a separate entity from the owners of the corporation who also own the land upon which the injury occurred." (Internal quotation marks omitted.) Id.

In rejecting the dual capacity doctrine, the Tennessee Supreme Court succinctly stated that "[t]he employer is the employer; not some person other than the employer. It is that simple." *McAlister* v. *Methodist Hospital of Memphis*, 550 S.W.2d 240, 246 (Tenn. 1977).

The thrust of these cases is that when the employer and the tort liability defendant are not the same legal entities, the dual capacity doctrine does not come into play. Accordingly, the fact that Connecticut has rejected the dual capacity doctrine should have no bearing on the correct determination of this appeal.

[7] The defendants have also admitted, in response to the intervening complaint filed by Dymax, that Anne Marie Roy was employed by Dymax at the time of her accident. This same acknowledgment was made by the defendants in their respective affidavits filed in support of their motion for summary judgment. That each of the defendants also alleged in their respective affidavits that "I maintained [w]orkers' [c]ompensation [b]enefits for all employees of Dymax" can only fairly be read in the context of their managerial responsibilities. Certainly, it does not lead to an inevitable conclusion that either or both of the defendants, and not Dymax, provided workers' compensation benefits for Dymax employees.

record reveals that the employer is Dymax, a Connecticut stock corporation with sixty-one shareholders holding an aggregate of 386,846 shares of outstanding stock. Between them, the defendants own 265,358 shares of stock. Notwithstanding these allegations and admissions, the court found that the defendants were Anne Marie Roy's employer at the time of her injury, and, as such, were entitled to the benefit of the exclusivity provision of the act. In rendering summary judgment, the court appears to have ignored the plaintiffs' allegations and the defendants' corresponding admissions. The court also appears to have incorrectly equated the defendants with Dymax on the basis of their officer status and majority holdings in the corporation. We know of no legal authority for such a conclusion.[8] To

[8] We are aware of no decisional law that would provide a pathway for a court to expand the statutory definition of employer to include, within the definition of employer, individuals simply because they are officers with managerial functions or substantial ownership interest in the employing entity. Our Supreme Court has observed with approval that "[t]raditionally, the law has viewed each corporation as a separate legal entity, with separate rights and obligations. For legal purposes, a bright line of distinction was drawn between the corporation and its shareholders." (Internal quotation marks omitted.) *SFA Folio Collections, Inc.* v. *Bannon*, 217 Conn. 220, 230 n.9, 585 A.2d 666, cert. denied, 501 U.S. 1223, 111 S. Ct. 2839, 115 L. Ed. 2d 1008 (1991); see also P. Blumberg, The Law of Corporate Groups (1983) § 1.01.1, p. 1.

To the extent that the dissent relies on cases dealing with the "right to control" concept for its conclusions that the Bachmanns were Roy's employer, the dissent's reliance is misplaced for two reasons. First, even though the Supreme Court, in *Doe* v. *Yale University*, 252 Conn. 641, 748 A.2d 834 (2000), cited by the dissent, looked to right-to-control cases in its discussion of whether Yale University could be viewed as the employer of a person who worked for Yale-New Haven Hospital, the "right to control" test is more fundamentally utilized to determine the nature of the relationship between an employee and a putative employer and not the identity of the latter. This is borne out by examination of every case cited in *Doe* in support of its invocation of the "right to control" test. See *Hanson* v. *Transportation General, Inc.*, 245 Conn. 613, 716 A.2d 857 (1998) (whether taxicab driver was employee or independent contractor); *Hunte* v. *Blumenthal*, 238 Conn. 146, 680 A.2d 1231 (1996) (whether foster parents could be considered employees of state where state exercised some degree of control over manner in which foster parents fulfilled their responsibilities); *Silverberg* v. *Great Southwest Fire Ins. Co.*, 214 Conn. 632, 573 A.2d 724 (1990) (whether assistant corporation counsel could be considered municipal employee);

the extent that the court conflated the defendants with Dymax, it incorrectly engaged in fact-finding, a function not appropriate for summary disposition.[9]

*Ross* v. *Post Publishing Co.*, 129 Conn. 564, 567, 29 A.2d 768 (1943) (whether newsboys were independent contractors or employees of newspaper).

It is significant that in none of these cases was the identity of the putative employer an issue; rather, in all of them, the question related to the relationship between the known parties. A second reason the dissent's reliance on *Doe* is misplaced is that *Doe* and the cases it cites affirm the proposition that whether a putative employer exercises sufficient control over an individual such that he or she may be viewed as an employee requires a fact bound inquiry. Thus, even if the "right to control" line of cases has any bearing on the issue we confront, the assessment of whether a putative employer exercises sufficient control is a question of fact not appropriate for summary judgment. See *Doe* v. *Yale University*, supra, 252 Conn. 641; *Hanson* v. *Transportation General, Inc.*, supra, 245 Conn. 613; *Chute* v. *Mobil Shipping & Transportation Co.*, 32 Conn. App. 16, 627 A.2d 956, cert. denied, 227 Conn. 919, 632 A.2d 688 (1993).

Additionally, if the dual capacity doctrine can be seen as an unwarranted exception to the exclusivity provisions of a state's workers' compensation scheme, the broad and loose definition of employer as suggested by the trial court's conflation of the defendants with Dymax in this instance can fairly be seen as the inappropriate erosion of a plaintiff's common-law right to bring a third party tort claim. In other words, the practical effect of the trial court decision is not to curb an unwarranted exception to the exclusivity provision of our act but, rather, to limit a tort plaintiff's common-law right to seek redress against one who has breached a duty of care, in this case, a claim based on premises liability. Such a result is contrary to our bedrock jurisprudence that statutes in derogation of the common law should be strictly construed. See *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 581, 657 A.2d 212 (1995). We agree with the sentiment of the statement in a New Jersey Supreme Court case that "[t]ort actions by employees against negligent third parties should be preserved to the maximum extent allowable by the workers' compensation law because [t]he fixed dollar ceilings on benefits under the workers' compensation laws are the result of a trade-off of certain liability of the employer for reduced awards for the employee." (Internal quotation marks omitted.) *Berko* v. *Freda*, 93 N.J. 81, 95, 459 A.2d 663 (1983) (Handler, J., dissenting). Although it could be argued that *Berko* reflects a claimant oriented approach, one need not be a partisan to hold the view that the act should be enforced as enacted and that its exclusivity provision should not be expanded by implication to the detriment of a person's common-law rights.

[9] Whether an entity may be considered the alter ego of another is not a question of policy to be decided as a matter of law. Indeed, because an alter ego claim is fact bound, it can only be resolved through a fact-finding process. In this instance, it is unclear whether the defendants seek to be considered the alter ego of Dymax. As special defenses, the defendants claimed the protection of the exclusivity provision of the act and § 31-293 (a). Although the trial court treated this as a claim that the plaintiff attempted

In sum, the trial court misconstrued the plaintiffs' complaint as a claim against Anne Marie Roy's employer. A fair reading of the plaintiffs' complaint, however, does not support such a construction. It is undisputed that Dymax paid Anne Marie Roy's workers' compensation and, as a consequence of being her employer, Dymax is insulated from tort liability for her injuries. The defendants against whom the plaintiffs have brought suit are individuals, the Bachmanns, and not Dymax. That the defendants have a stock interest in and serve as officers of Dymax does not, itself, provide any basis for concluding that they, and not Dymax, are Anne Marie Roy's employer. The plaintiffs simply are asserting a premises liability claim against the defendants, the landowners. Having incorrectly made the determination that the defendants were Anne Marie Roy's employer, the court rendered summary judgment in favor of the defendants on the basis of its mistaken belief that the plaintiffs had sought to invoke the dual capacity doctrine to avoid the exclusivity provision of the act. Because the plaintiffs' complaint does not allege

---

to invoke the dual capacity doctrine in order to evade the act's exclusivity provision, the generality of the defendants' special defenses could also, perhaps, be viewed as a claim of alter ego.

The essence of such a claim would be that the defendants are the alter ego of the employer for purposes of invoking the exclusive remedy provisions of the act. Such a claim, in this instance, would require a reverse piercing of the corporate veil to find that the defendants are, in essence, Dymax. Regardless of whether or not the underlying facts appear apt for alter ego consideration, the question of whether the defendants can successfully claim to be the alter ego of Dymax is not appropriate for summary disposition. See, e.g., *Suarez* v. *Dickmont Plastics Corp.*, 242 Conn. 255, 290, 698 A.2d 838 (1997) (*Berdon, J.*, concurring in part and dissenting in part) ("it is a question of fact whether the managerial employee is sufficiently high in the chain of command to be considered the alter ego of the corporate employer without respect to the employee's formal title"); *Morocco* v. *Rex Lumber Co.*, 72 Conn. App. 516, 527, 805 A.2d 168 (2002) (whether one can be considered alter ego for another is question of fact). Therefore, in the case at hand, even if the defendants' claim could fairly be read as an assertion that, as landlords, they are only the alter ego of Dymax, their claim is not amenable to summary disposition because its resolution requires a factual inquiry.

a claim against Anne Marie Roy's employer, the exclusivity provision of the act regarding employers is not implicated in this tort claim against the defendants.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion HARPER, J., concurred.

WEST, J., dissenting. I respectfully dissent from the majority's determination that the exclusivity rule of the Workers' Compensation Act[1] (act); General Statutes § 31-275 et. seq.; does not shield the defendants, Andrew G. Bachmann and Jane B. Bachmann, from liability for damages arising from injuries sustained by the plaintiff Anne Marie Roy, for which she was compensated under the act. The majority concludes that Roy and her husband, Steven Roy, who also is a plaintiff, maintained their action against the defendants as "landowners" and, as a result, for purposes of the act's exclusivity rule, the defendants could not be considered Anne Marie Roy's employer. Therefore, because the exclusivity rule is applicable only as a bar to actions against an employer, the majority concludes that the present action for damages against the defendants in their persona as landowners was not barred. I disagree.

I agree with the majority's statement of the law, as well as the standard of review, applicable to a trial court's decision to grant a motion for summary judgment. I do, however, underscore that "[i]t is well established . . . that where it is undisputed that [a] plaintiff was engaged in the course of . . . employment at the time of [an] accident, whether he is barred by the [act]

[1] General Statutes § 31-284 (a) is the exclusivity provision of the act and provides that an employer, although required to compensate an employee as set forth in the act for death or personal injury sustained in the course of employment, is not liable in a civil action for damages arising from that injury.

from maintaining an action against a tortfeasor is a question of law for the court." *Velardi* v. *Ryder Truck Rental, Inc.*, 178 Conn. 371, 375, 423 A.2d 77 (1979). Furthermore, I agree with the majority's characterization of the exclusivity rule and its statutory exception under our workers' compensation scheme, as well as those expressly carved out by our Supreme Court. It seems to me, however, that the majority concludes that because the defendants possessed a landowner persona and the plaintiff was an employee of Dymax Corporation at the time of her injury, the defendants could under no circumstance be considered as Anne Marie Roy's employer for the purposes of the application of the exclusivity rule, and, therefore, the rule does not shield them from this action. I see no reason to adhere to the analytical approach of the majority. For the reasons set forth, I conclude that because, under the applicable precedents, the defendants, for the purposes of our workers' compensation law and in these circumstances, can be considered Anne Marie Roy's employer, the exclusivity rule applies. Therefore, I would hold, on the basis of this record, that the court properly rendered summary judgment in favor of the defendants and would affirm the court's judgment.

"The purpose of the [workers'] compensation statute is to compensate the worker for injuries arising out of and in the course of employment, without regard to fault, by imposing a form of strict liability on the employer. . . . The [act] compromise[s] an employee's right to a common law tort action for work related injuries in return for relatively quick and certain compensation." (Citations omitted; internal quotation marks omitted.) *Dowling* v. *Slotnik*, 244 Conn. 781, 799, 712 A.2d 396, cert. denied sub nom. *Slotnik* v. *Considine*, 525 U.S. 1017, 119 S. Ct. 542, 142 L. Ed. 2d 451 (1998). "The entire statutory scheme of the [act] is

directed toward those who are in the employer-employee relationship as those terms are defined in the act and discussed in our cases. That relationship is threshold to the rights and benefits under the act . . . ." (Internal quotation marks omitted.) Id., 800. "Just as a claimant may invoke the act's remedies only if the claimant satisfies the jurisdictional requirement of an employee as set forth in § 31-275 (9) . . . only those defendants who satisfy the requisite jurisdictional standard of an employer as set forth in § 31-275 (10) may successfully assert the exclusivity of the act as a bar to a common-law action by an alleged employee." (Citations omitted.) *Doe* v. *Yale University*, 252 Conn. 641, 680, 748 A.2d 834 (2000). "In short, if the defendant was the plaintiff's employer, the plaintiff [is] relegated to the remedies afforded by the [act]." *Velardi* v. *Ryder Truck Rental, Inc.*, supra, 178 Conn. 376.

Our Supreme Court has utilized the "right to control" test in order to determine whether a defendant in a workers' compensation case was an employer as defined in § 31-275 (10). See *Doe* v. *Yale University*, supra, 252 Conn. 680–82 (whether individual or entity is employer under act is question of specific individual's or entity's degree of control over alleged employee). "The right to control test determines the [relationship between a worker and a putative employer] by asking whether the putative employer has the right to control the means and methods used by the worker in the performance of his or her job." (Internal quotation marks omitted.) *Hanson* v. *Transportation General, Inc.*, 245 Conn. 613, 620, 716 A.2d 857 (1998). "The test of the relationship is the right to control. It is not the fact of actual interference with the control, but the right to interfere . . . ." (Internal quotation marks omitted.) *Doe* v. *Yale University*, supra, 681.[2]

[2] Since *Doe* v. *Yale University*, supra, 252 Conn. 641, was decided, our Superior Courts have applied the "right to control" test in the context of workers' compensation cases and have cited *Doe* as supportive of the

The affidavits submitted by the Bachmanns assert the following unrefuted indicia of the defendants' right to control Anne Marie Roy as her employer: both defendants were owners of Dymax Corporation, a closely held corporation; the defendants together owned over 68 percent of the outstanding stock; Andrew G. Bachmann was the chief executive officer, president and chairman of the board; he signed all paychecks. Jane B. Bachmann was a vice president, and the defendants themselves "maintained [w]orkers' [c]ompensation [b]enefits for all employees of Dymax Corporation . . . ." See General Statutes § 31-275 (10) (employer may accept and become bound by provisions of this chapter by immediately complying with General Statutes § 31-284). The plaintiffs did not submit any materials raising an issue of material fact with respect to those assertions. The mere assertion of the legal conclusion that the defendants were not, for the purposes of our workers' compensation scheme, Anne Marie Roy's employer was not sufficient to defeat the defendants' motion for summary judgment. See *Velardi* v. *Ryder Truck Rental, Inc.*, supra, 178 Conn. 375. The defendants had the burden of showing the nonexistence of a material fact; *Himmelstein* v. *Windsor*, 116 Conn. App. 28, 42, 974 A.2d 820, cert. granted on other grounds, 293 Conn. 927, 980 A.2d 910 (2009); and the evidence presented, if otherwise sufficient in this regard, is not rebutted by the naked statement that an issue of fact

proposition that the determination of whether a defendant is an employer under the act is a question of the defendant's degree of control over the alleged employee. See, e.g., *Smith* v. *J.P. Alexandre, LLC*, Superior Court, judicial district of Hartford, Docket No. CV-04-4005356-S (July 26, 2009) (whether defendant is employer under act is question of defendant's degree of control over alleged employee); *Sullivan* v. *Conniff*, Superior Court, judicial district of New Haven, Docket No. CV-02-0463372-S (August 17, 2004) (same) (37 Conn. L. Rptr. 704); *Milton* v. *Fulmer*, Superior Court, judicial district of New Haven, Docket No. CV-02-0467452-S (July 11, 2003) (same); *Owens* v. *A. Anastasio & Sons Trucking Co.*, Superior Court, judicial district of New Haven, Docket No. CV-99-0421367S (June 30, 2000) (same).

does exist. See *Velardi* v. *Ryder Truck Rental, Inc.*, supra, 375. As a result, I conclude that the court properly rendered summary judgment in favor of the defendants on the ground that the exclusivity rule of the act bars Anne Marie Roy's claim of negligence.

I, therefore, respectfully, dissent.